**UNITED STATES of America,**
**Plaintiff,**

v.

**$104,250.00 IN U.S. CURRENCY,**
**Defendant.**

**Civil No. 12–cv–03566–RDB.**

United States District Court,
D. Maryland,
Northern Division.

May 29, 2013.

Stefan Dante Cassella, Rod J. Rosenstein, Office of the United States Attorney, Baltimore, MD, for Plaintiff.

## ORDER

RICHARD D. BENNETT, District Judge.

Before the Court is the Government's motion, filed pursuant to Supplemental Rule G(8)(c), F.R.Civ.P., to compel the Claimant Norma Fouche to comply with Rule G(5)(a) by filing a more detailed statement of her claim to the defendant property, or in the alternative, to strike her claim for failure to comply with the Rule. The Claimant has not filed a response to the Government's motion. For the following reasons, the motion to strike the claim is granted.

## I. BACKGROUND

### A. The Nature of the Forfeiture Action

This is a civil forfeiture action against U.S. currency involved in violations of the Controlled Substances Act and the money laundering statutes, making the currency subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), respectively. The defendant property is $104,250.00 in U.S. Currency that was seized from the Claimant, Norma Fouche, at the TSA security checkpoint at BWI Airport on September 7, 2012.

The Government's Verified Complaint (Doc. 1) sets forth the following facts in support of the forfeiture action: On September 7, 2012, a person using the name "Norma Fouche" passed through the TSA checkpoint at B–Pier, Lane 4 at BWI Thurgood Marshall Airport with a ticket to board Southwest Airlines flight 304 to Phoenix. When "Fouche" passed through the checkpoint, she was in possession of a carry-on bag that contained a package wrapped in birthday paper. Upon examination by law enforcement personnel, the package was found to contain $104,250.00 in U.S. currency, wrapped in black paper with the ends taped closed so that none of the currency was visible. The money was in two large bundles of various denominations, wrapped in smaller bundles with preprinted bands.

"Fouche" stated that the money belonged to her, and that she had just re-

ceived it as payment for an estate. A drug-detection dog displayed a positive alert to the odor of a controlled substance on the currency.

Further investigation revealed that "Fouche's" true name is Norma Gibson, and that in addition to "Norma Fouche," she has used various other aliases, including Sharon Brown, Norma Ruth Del, Norma M. Fouche, Norma R. Fouche, Norma R. Gibson, Normana Gibson, Norma Mahon, Norma R. Mahon, Norma Matton, Norma Wilson, Norma N. Wilson, and Sandy Wilson. The investigation also revealed that Fouche/Gibson has been arrested multiple times for criminal offenses in Arizona, New York and other places for the possession and distribution of a controlled substance, the possession of a loaded firearm, aggravated assault, and interference with judicial proceedings.

## B. Claimant's Claim to the Defendant Property

The Government filed the instant forfeiture action on or about December 6, 2012, and sent notice to Norma Fouche of her right to file a claim pursuant to Rule G(5)(a). On January 15, 2013, Fouche responded by filing a "Verified Claim" that stated only that "he[r] interest in the property herein is an ownership and possessory interest." (Doc. 5) In response, on January 23, 2013, the Government sent Fouche a letter explaining that a "bald assertion of ownership" is insufficient to state a claim under Rule G(5)(a). The letter went on to cite the substantial case law on this issue, and concluded by giving Fouche an additional 21 days to correct her claim.

On February 7, 2013, Fouche sent a letter to the Assistant U.S. Attorney acknowledging that she "must document the source of all the funds in question," and asking for another extension of time to do so. On February 19, 2013, the Govern-

ment, in response to Fouche's request, gave Fouche an additional extension, to March 8, 2013, to comply with the Rule.

Finally, on March 9, 2013, Fouche sent the Government a letter on her attorney's letterhead, purporting to expand on her original claim to the seized currency. Instead of "document[ing] the source of all the funds in question" as she promised to do, however, the letter added only the following sentence regarding her relationship to the defendant property: "This money ... is proceeds of my personal investments in the entertainment industry, and proceeds from my mother's estate."

## DISCUSSION

### A. Summary

■ Neither Fouche's original claim nor the amended version submitted on March 9, 2013 sufficiently describes her interest in the seized currency to comply with the pleading requirements in Rule G(5)(a). Even as amended, the claim is little better than a "bald assertion of ownership"—an assertion that courts have consistently held to be insufficient to state a claim.

Courts require claimants in civil forfeiture cases to set forth the nature of their interest in the defendant property in greater detail for two reasons: to deter false claims and to allow the Government to focus its discovery requests in a way that would not be possible if it had to guess at the nature of the claimant's alleged interest in the property. Allowing a claimant to make a vague claim that the money came from "personal investments in the entertainment industry" does nothing to discourage the making of a false claim. Only by requiring a claimant to state the nature of her interest with specificity can the threat of a perjury prosecution for making a false claim effectively deter persons from attempting to contest the forfei-

ture of property in which they have no true interest.

Moreover, Claimant's claim, even as amended, is so vague as to provide the Government with no guidance whatsoever as to how to direct its discovery requests. As the Government argues, the quantity of currency, the manner in which it was packaged, the dog alert, the Claimant's numerous aliases, and her criminal record all suggest that the Claimant may have been acting as a courier for a drug trafficking organization. Hence, if this case were to go forward, the threshold issue would be whether the Claimant has a sufficient interest in the property to establish standing to contest its forfeiture.

To that end, the Government is entitled to serve the Claimant with special interrogatories pursuant to Rule G(6), inquiring into her identity and the circumstances surrounding her acquisition of the seized currency. Indeed, the drafters of Rule G(6) intended the special interrogatories to provide an efficient means of testing the truthfulness of the Claimant's claim to have a real interest in the defendant property. But as submitted and amended, the vagueness of the claim will require multiple rounds of interrogatories as the Government attempts to zero in on the facts asserted to establish standing to contest the forfeiture. That is the very antithesis of the focused inquiry that the drafters intended and that the interests of justice require.

## B. Rule G

Civil forfeiture actions are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Rule G(1). Rule G(5)(a) provides that a person contesting the forfeiture of property in a civil forfeiture action must file a verified claim identifying the claimant and her interest in the prop-

erty. Rule G(5)(a)(i)(B). Rule G(8)(c) permits the Government to move to strike a claim for failing to comply with Rule G(5).

### 1. Rule G(5)(A)

As the Government advised the claimant in its letter of January 23, 2013, numerous courts have held that a claim that makes only a "bald assertion of ownership" is insufficient to comply with the rule. The first reason for this requirement is simple: Civil forfeiture cases are *in rem* proceedings in which anyone could conceivably file a claim to the defendant property. In the case of currency that is seized from a traveler at an airport, on a bus or train, or in a vehicle stopped on the highway, the claim could be filed by anyone present at the scene, whether that person had an actual interest in the money or was acting merely as a courier for someone else. Thus, as the Ninth Circuit held in *United States v. $100,348*, 354 F.3d 1110, 1118–19 (9th Cir.2004), because "the danger of false claims in these proceedings is substantial," courts require more than "conclusory or hearsay allegations of some interest in the forfeited property."

In *United States v. $134,750 U.S. Currency*, 2010 WL 1741359, *3 (D.Md. Apr. 28, 2010), Judge Titus held that a claimant asserting an interest in seized currency "needs to provide detail as to how he obtained possession of the currency, including, but not limited to, the persons(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency." Other district courts from throughout the country have taken a similar view. *See United States v. $39,557.00, More or Less, U.S. Currency*, 683 F.Supp.2d 335, 339–40 (D.N.J.2010) (bald assertion of ownership is not sufficient to comply with Rule G(5); claimant who was passenger in vehicle where currency was found under the seats, and who

initially denied any knowledge of it, must explain how he obtained the currency and what it was doing there); *United States v. $304,050.00 U.S. Currency*, 2012 WL 4953126, *2 (M.D.Fla. Oct. 17, 2012) (collecting cases holding that a bald assertion of ownership is insufficient to comply with Rule G(5)(a)(i)(B) and Rule 8, but granting claimant leave to perfect his claim); *United States v. $196,969.00 U.S. Currency*, 2012 WL 4128035, *2 (S.D.Ind. Sept. 20, 2012) (following *$134,750;* bald assertion of ownership does not satisfy Rule G(5)(a)(i)(B); claimant must state in detail how he came into possession of the seized currency; Rule G(5) must be strictly enforced to avoid false claims); *United States v. $67,500 in U.S. Currency*, 2012 WL 1372186, *1 (M.D.Fla. Apr. 16, 2012) (following *$100,348* and *$39,557.00;* blanket assertion of ownership is not sufficient to assert a claim under Rule G(5), even if the claimant was in possession of the property at the time it was seized); *United States v. $140,000.00 in U.S. Currency*, 2010 WL 1704966, *4 (D.N.J. Apr. 26, 2010) (following *$39,557.00;* where money is found in a hidden compartment in a vehicle, "bald assertion of ownership" or "proprietary interest" is not sufficient to comply with Rule G(5)(a)(i)(B)); *United States v. $164,750 U.S. Currency*, 2010 WL 2545549, *2 (D.N.J. June 18, 2010) ("bald assertions of ownership do not sufficiently state a claimant's interest, as required by Supplemental Rule G(5)(a)(i)(B)"). *See also Arevalo v. United States*, 2011 WL 442054, *4–5 (E.D.Pa. Feb. 8, 2011) (to establish standing to contest the forfeiture of property seized from a third party, a claimant must do more than assert ownership of the property; he must explain the source of the money and what it was doing in the third party's possession). *But see United States v. $304,980 U.S. Currency*, 2013 WL 54005, *13 (C.D.Ill. Jan. 3, 2013) (bald assertion of ownership, coupled with

possession of the seized property, is sufficient to satisfy the pleading requirements in Rule G(5)(a)).

The point emphasized by the courts in all of these cases is the same. The only safeguard the courts have against the filing of false claims in civil *in rem* proceeding is the threat that the filing of a false claim will trigger a perjury prosecution. Indeed, that is why so many courts have emphatically enforced the requirement that the claim be filed under oath. *See United States v. $487,825.00*, 484 F.3d 662, 664–65 (3d Cir.2007) (the requirement that a claimant file a timely verified claim serves two purposes: it forces claimants to come forward as quickly as possible, and it minimizes the danger of false claims); *United States v. $125,938.62*, 370 F.3d 1325, 1328 (11th Cir.2004) (a verified claim is essential to conferring statutory standing and is necessary to deter the filing of false claims; the claim must be verified by the claimant, not by counsel); *United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 597–598 (7th Cir.2000) (verification forces the claimant to place himself at risk of perjury for false claims; failure to verify the claim results in dismissal for lack of statutory standing); *United States v. $102,535 U.S. Currency*, 499 Fed.Appx. 134, 136 (3d Cir.2012) (following *$487,825.00* and reiterating that "Verification is an essential element of any claim because of the substantial danger of false claims"; unverified answer is no substitute for a verified claim); *United States v. One Men's Rolex Pearl Master Watch*, 357 Fed.Appx. 624, 627 (6th Cir.2009) (the verification requirement in Rule G(5)(a) is strictly enforced to avoid the danger of false claims in forfeiture cases; signature of claimant's attorney is not sufficient) (collecting cases); *United States v. 35 Firearms*, 123 Fed.Appx. 204, 207 (6th Cir.

2005) ("Verification forces the claimant to place himself at risk of perjury for a false claim. Therefore, the Government's insistence on a verified claim is not … form over substance."); *United States v. $14,250 U.S. Currency,* 2012 WL 6681920, *2 (D.Md. Dec. 21, 2012) (holding that "courts are entitled to insist on procedural regularity," court strikes claim not filed under penalty of perjury and enters judgment for the Government).

Here, Claimant's claim, even as amended, is too vague to make the threat of a perjury prosecution for filing a false claim a true deterrent. Virtually anything could be characterized as the "proceeds of an investment in the entertainment industry." In this as in other cases, the only way to guard against the possibility that the Claimant is making a false claim is to insist that she state the source of the defendant property in more detail, and that she do so under oath.

### 2. Special Interrogatories under Rule G(6)

■ The threshold issue in civil forfeiture cases is standing. *See United States v. $14,800.00 in U.S. Currency,* 2012 WL 4521371, *3 (D.Md. Sept. 28, 2012) ("standing is a threshold issue that must be resolved before addressing an asset forfeiture claim"). Under Rule G(8)(c)(ii)(B) the Government may move to strike a claim for lack of standing at any time, or may file a motion for summary judgment alleging that the claimant has not established facts sufficient to establish a true interest in the property by a preponderance of the evidence.

To facilitate the Government's ability to challenge claims on standing grounds, Rule G(6) permits the Government to serve the Claimant with "special interrogatories" that focus on the Claimant's identity and her interest in the defendant property. Indeed, the importance of the standing issue and of the role of the special interrogatories is underscored by Rules G(6)(c) and G(8)(c)(ii)(A) which provide that the claimant must respond to the special interrogatories, and court must determine whether the claimant has standing to contest the forfeiture, before court addresses any other issue that the claimant may raise. *See United States v. $14,800.00 in U.S. Currency,* 2012 WL 4521371 at *3; *United States v. Approximately $750,000 U.S. Currency,* 2011 WL 6155687, *2–3 (S.D.N.Y. Dec. 8, 2011) (Government need not respond to claimant's motion to dismiss until 21 days after claimant answers special interrogatories because claimant's responses may provide a basis for the Government to challenge standing, which must be resolved before the motion to dismiss); *United States v. Real Property Located at 1108 Brookdale Court,* 2009 WL 1851222, *2 (W.D.Mo. June 29, 2009) (under Rule G(6)(c), Government is not required even to respond to motion to dismiss the complaint until 20 days after claimant has responded to Rule G(6) special interrogatories); *United States v. Approximately $658,830.00 U.S. Currency,* 2011 WL 5241311, *3 (E.D.Cal. Oct. 31, 2011) (because special interrogatories are intended to obtain information needed to determine claimant's standing, and because standing is a prerequisite to filing a motion to dismiss the complaint, the Government need not respond to a motion to dismiss until claimant has answered the special interrogatories).

In cases like this one, the Government needs to use the special interrogatories to test the Claimant's assertion that she is the true owner of the defendant property and not merely a courier for a third party. But to do that, the Government must know what assertion of ownership the Claimant is making. Here, the Claimant asserts only that the money was proceeds of "per-

sonal investments in the entertainment industry, and proceeds of my mother's estate." There is no way, given such vague notions of her connection to the seized currency, that the Government could propound focused interrogatories that test the truthfulness of her claim.

To be sure, the Government could serve the Claimant with two sets of special interrogatories—one set asking her to identify the "investments" in the entertainment industry and the "proceeds" of her mother's estate to which she refers, and a second set asking detailed questions about those items once she has made them known. But the interests of justice would be better served by forcing the Claimant to spell out her interest in the property at the outset so that the Government could focus directly on the interest that she is asserting in the first instance.

Justice is not served by forcing the Government to engage in multiple rounds of discovery before it can hone in on the facts the Claimant is offering to establish her standing to contest the forfeiture. Too much time is wasted in civil forfeiture cases as the parties parry the threshold issue of standing. Indeed, the prosecution of this case has already been delayed for more than five months by Claimant's failure to file a valid claim and the Government's acquiescence in her requests for additional time to do so, only to have the Claimant use the additional time to add a single sentence that is a study in vagueness to her Verified Claim.

### C. The Sanction

■ This court has the authority under Rule G(8)(c) to dismiss the Claimant's claim for failure to comply with Rule G(5)(a). The Claimant is not *pro se;* she is represented by counsel, and she has already been given two opportunities to file a valid claim. Apparently she has made a strategic choice not to do so. In that situation, courts have granted motions to strike the claim as the appropriate sanction. *See United States v. $196,969.00 U.S. Currency,* 2012 WL 4128035, *2 n. 3 (S.D.Ind. Sept. 20, 2012) (noting that courts have the discretion to allow a claimant a second chance to comply with the pleading requirements in Rule G(5) by granting leave to file an amended pleading, but declining to do so where claimant's action appears to be a "strategic choice").

Alternatively, courts have given claimants a second (or third) chance to comply with Rule G(5)(a) by filing an amended claim that sets forth the claimant's interest in the defendant property in the appropriate detail. *See United States v. $304,050.00 in U.S. Currency,* 2012 WL 4953126 at *2 (collecting cases holding that a bald assertion of ownership is insufficient, but granting claimant leave to perfect his claim). In this case, however, it appears that the Claimant has made her strategic choice and that giving her still another opportunity to file a claim that sets forth the time and circumstances of her acquisition of the defendant property would accomplish nothing.

### CONCLUSION

Accordingly, the Government's motion to strike the Claimant's claim pursuant to Rule G(8)(c) granted. There being no other claims to the defendant property, the defendant property is hereby forfeited to the United States to dispose of in accordance with law.

This case is closed.