Opinion by Judge BUCKLO; Dissent by Judge RAWLINSON.
OPINION
BUCKLO, Senior District Judge:
Byron Pickle (“Pickle”) appeals the district court’s June 15, 2012, default judgment and final judgment of forfeiture of real property located at 17 Coon Creek Road in Hawkins Bar, California (the “defendant property”). The judgment was entered after the court granted the government’s motion to strike Pickle’s claim and answer based on Pickle’s failure to respond to special interrogatories the government propounded pursuant to Federal Rules of Civil Procedure’s Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (“Rule”) G(6)(c)(i)(A), and then denied Pickle’s motion to stay on the ground that without a claim, Pickle lacked standing to challenge the forfeiture action.
It is apparent from the district court’s order that it viewed Pickle’s failure to answer the Rule G(6) special interrogatories as a per se basis for striking his claim. Because that conclusion is incorrect as a matter of law, we reverse and remand the ease for further proceedings consistent with this opinion.
BACKGROUND
On July 16, 2009, the United States initiated this in rent action seeking forfeiture of the defendant property. The forfeiture action was the result of criminal investigations by the California Bureau of Narcotic Enforcement (BNE) into suspected marijuana trafficking activities by claimant Byron Pickle, his son, .James Pickle, and his brother, Thomas Pickle, all of whom were arrested after searches executed on the defendant property (where Pickle resided), and the “Hennessy Road property” (where Thomas and James resided), revealed, inter alia, a large marijuana cultivation site, several hundred marijuana plants, bagged marijuana, packaging materials, firearms, and tens of thousands of dollars in cash. James and Thomas were charged with state drug offenses, but the District Attorney declined to file criminal charges against Pickle, and the BNE closed its investigation into Pickle’s conduct on May 27, 2010.
The government’s verified complaint for forfeiture states that Pickle is “[t]he recorded owner of the defendant real property.” It further asserts that “Pickle occupies the main residence” located on the defendant property, and that one of Pickle’s sons occupies a travel trailer also located on the property.
Pickle filed a verified claim in this proceeding on August 11, 2009, in which he likewise stated that he is the “recorded owner” of the defendant property. Pickle also filed an answer on September 4, 2009, in which he claimed “an innocent possesso-ry and/or ownership interest” in the defendant property.[1]
*971 On October 7, 2009, the parties stipulated, and the district court agreed, to a six month stay of the action based on the ongoing criminal inyestigation of Pickle and the ongoing prosecution of James and Thomas. The stay was extended, by court-approved stipulation, in May, August, and November of 2010. In all three of these stipulations, the parties observed that “it does not appear that any charges will be filed against claimant Byron Pickle,” but agreed that the stay was warranted in view of the ongoing prosecution of James and Thomas, whose anticipated invocation of the Fifth Amendment would interfere with the government’s ability to gather relevant information. The November 2010 stay was set to expire on March 28, 2011, and the parties were directed to file a status report by March 14, 2011, “advising the Court whether a further stay is necessary.”
The Joint Status Report the parties submitted pursuant to the November stay order did not request a further stay of the proceedings, but instead specified topics for discovery; proposed discovery deadlines; provided for motions and filing deadlines; and proposed a trial date. The district court issued a Pretrial Scheduling Order on March 23, 2011, setting February 16, 2012, as the discovery cutoff, April 16, 2012, as the deadline for hearing disposi-tive motions, and September 11, 2012, as the trial date.
On July 21, 2011, the United States served a Request for Admissions, General Interrogatories, Special Interrogatories, and a Request for Production of Documents. The special interrogatories specifically asked Pickle to:
(1)State your full name for all names by which you are now known, or have been known in the past, including any and all aliases;
(2) State every Social Security Number and driver’s license number you have used with each name;
(3) State the date and place of your birth;
(4) State your present residence address; and
(5) Identify and describe with particularity the nature of your interest in the defendant real property.
Pursuant to Rule G(6)(b), Pickle had twenty-one days, i.e., until August 15, 2011, to respond to the special interrogatories.
Pickle did not timely respond to the special interrogatories, but on August 17, 2011, the parties agreed to extend the deadline to September 19, 2011. Meanwhile, on August 2, 2011, Pickle moved to suppress the marijuana evidence obtained from the search of his property in 2008, and to dismiss the forfeiture proceedings pursuant to Rule G(8)(b)(i) and Fed.R.Civ.P. 12(b)(6), arguing that without the marijuana evidence, the United States could not state a claim for forfeiture. Then, on September 6, 2011, Pickle moved for a stay of the proceedings on the ground that “all of the discovery requests” the government served on July 21, 2011, sought information that implicated his Fifth Amendment protection against self-incrimination.
On October 11, 2011, the government filed both an opposition to Pickle’s motion to stay and a motion to strike Pickle’s claim. In both of these submissions, the government argued, inter alia, that Pickle’s failure to respond to the Rule G(6) special interrogatories caused him to lack the “statutory standing” required to seek a stay of the proceedings or to contest the forfeiture of the defendant property.
On October 21, 2011, the district court issued a scheduling order resetting the dates on which the various pending mo *972 tions would be heard. The court concluded that the government’s motion to strike must be resolved before either of Pickle’s pending motions.
The court granted the government’s motion to strike Pickle’s claim on December 20, 20Í1. In the same order, the court denied Pickle’s motion to stay, explaining that “absent a claim to the defendant property, Pickle no longer has standing to contest this forfeiture action.” On June 15, 2012, the district court entered a judgment of default and final judgment of forfeiture. Petitioner timely appealed.
STANDARD OF REVIEW
We review the district court’s interpretation of the Supplemental Admiralty and Maritime Claims Rules de novo. United States v. $11,500.00 in U.S. Currency, 710 F.3d 1006, 1010 (9th Cir.2013). While “[dismissal of a forfeiture claim for failure to comply with procedural requirements is reviewed for abuse of discretion,” id. at 1011, a claimant’s standing “is a threshold issue which we review de novo.” United States v. 22249 Dolorosa Street, 167 F.3d 509, 511 (9th Cir.1999).
DISCUSSION
Pickle assigns three errors to the district court’s final judgment. First, Pickle claims that the court abused its discretion by adjudicating the government’s motion to strike before considering Pickle’s first-filed motion to stay. Relatedly, Pickle asserts that the court abused its discretion when it held that Pickle lacked standing to challenge the forfeiture once his claim was stricken, reasoning that the ground on which the claim was stricken would not have arisen had the action been stayed. Third, Pickle contends that the district court abused its discretion by failing to afford him the opportunity to cure his violation of Rule G(6) prior to striking his claim.
The challenged district court decisions all rested on one central error in the district court’s analysis — its conclusion that it was compelled to strike Pickle’s claim once it determined that he had failed to comply with Rule G(6). As we will explain, Pickle’s failure to answer the G(6) interrogatories would not have warranted striking his claim as a discovery sanction without giving Pickle an opportunity to cure his lack of response. Nor did Pickle’s failure to comply with Rule G(6) vitiate his statutory standing. For both of these reasons, the district court erred in striking Pickle’s claim.
1. The constitutional and procedural requirements of claims pursuant to CAFRA
The Civil Asset Forfeiture Reform Act of 2000 (“CAFRA”), 18 U.S.C. § 983, governs all in rem civil forfeiture proceedings commenced on or after August 23, 2000. See United States v. Approximately $1.67 Million (U.S.) in Cash, 513 F.3d 991, 998 (9th Cir.2008). Section 983(a)(4)(A) of the statute provides:
In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person’s interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims....
18 U.S.C. § 983(a)(4)(A).
Rule G(5) of the incorporated Supplemental Rules — formerly Rule C(6) — enumerates the filing requirements for a verified claim under CAFRA. It mandates, inter alia, that a claim: identify the specific property claimed; identify the claimant and state the claimant’s interest in the *973 property; be signed by the claimant under penalty of perjury; and be served on the government attorney identified in the government’s notice of proceedings. Rule G(5)(a).
Rule G(6), captioned “Special Interrogatories,” establishes that “[t]he government may serve special interrogatories limited to the .claimant’s identity and relationship to the defendant property without the court’s leave at any time after the claim is filed and before discovery is closed,” and requires answers or objections to be served within 21 days after the interrogatories are served. We have explained that the “purpose of [Rule G(6) ] is ‘to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant’s standing.’ ” United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 635 (9th Cir.2012) (quoting Supplemental Rule G Advisory Committee Notes (subdivision (6))).
Rule G(8)(c)(i) provides that the government may move to strike a claim:
(A) for failing to comply with Rule G(5) or (6), or
(B) because the claimant lacks standing. Although Rule G(8) authorizes the government to bring a motion to strike on these bases, the Advisory Committee Notes to Rule G(8) caution courts that when a motion to strike is brought pursuant to Rule G(8)(c)(i)(A), “the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15. Not every failure to respond to subdivision (6) interrogatories warrants an order striking the claim.” Accordingly, courts typically afford claimants one or even several opportunities to cure defective Rule G(6) responses, except where the circumstances indicate that it would be futile to do so or reflect persistent discovery abuses. See, e.g., United States v. Approximately $658,830.00 in U.S. Currency, No. 2:11-cv-00967 MCE KJN PS, 2011 WL 5241311, at *3 (E.D.Cal. Oct. 31, 2011) (declining to strike claim for failure to comply with Rule G(6), quoting Advisory Committee Notes’ guidance that “ ‘[n]ot every failure to respond to subdivision (6) interrogatories warrants an order striking the claim,’ ” and therefore affording the claimant twenty-one days to respond to the special interrogatories); United States v. $4,656,085.10 in Bank Funds, No. SACV 12-0219-DOC, 2014 WL 5393858, at *4-*6 (C.D.Cal. Sept. 15, 2014) (striking claim only after claimant failed to heed an order compelling her to respond to the government’s special interrogatories, failed to appear at a hearing on the government’s motion for a default judgment, and failed to respond to an order to show cause as to why her claim should not be stricken); United States v. Approximately $10,000 in U.S. Currency, No. 1:11-cv091845-SKO, 2013 WL 5314890, at *4-*5 (E.D.Cal. Sept. 20, 2013) (granting the government’s unopposed motion to strike after concluding that claimant had abandoned the litigation generally, as he had not only failed to respond to the government’s special interrogatories, but had also ceased communicating with his attorney and had failed to take any steps to retain a new attorney or proceed pro se).
To pursue a claim, the claimant must demonstrate, in addition to the usual requirement of establishing Article III standing, see Clapper v. Amnesty Int’l USA, — U.S. —, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013), compliance with “the jurisdictional procedural requirements” set forth in Supplemental Rule G(5). United States v. $100,348.00 in U.S. Currency, 354 F.3d 1110, 1126 (9th Cir.2004). Many courts refer to the latter as “statutory standing” and have held that it *974 is established through compliance with Rule G. See id.; see also, e.g., United States v. $487,825.000 in U.S. Currency, 484 F.3d 662, 664 (3rd Cir.2007) (“[t]o establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in Rule C(6)(a)” [the predecessor to Rule G(5) ] and § 983(a)(4)(A)).
This circuit and others have stated that standing to contest a forfeiture action can be conditioned on “strict compliance with filing requirements.” United States v. 5145 N. Golden State Blvd., 135 F.3d 1312, 1316 (9th Cir.1998) (citing United States v. One Urban Lot, 978 F.2d 776, 778 (1st Cir.1992)); see also United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1112-15 (5th Cir.1992); United States v. Eng, 951 F.2d 461, 468 (2d Cir.1991), abrogated on other grounds by Degen v. United States, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). Nevertheless, the term “standing” is something of a misnomer, as “courts have ‘discretion to overlook the failure to conform to the requirements of [forfeiture claim rules].’ ” United States v. $11,500.00 in U.S. Currency, 710 F.3d 1006, 1012 (9th Cir.2013) (quoting United States v. 2659 Roundhill Dr., 194 F.3d 1020, 1024 (9th Cir.1999)) (alteration in original); see also United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1262 (2d Cir.1989) (excusing technical noncompliance with procedural rules governing filing of claims on ground that claimant made sufficient showing of interest in property).
2. The government’s motion to strike
In this case, the government identified Rule G(8)(c)(A) as the basis for its motion to strike. It then zeroed in on Pickle’s failure to answer its Rule G(6) special interrogatories as the specific ground on which it based its entitlement to relief. The government’s motion did not assert that Pickle had failed to comply with Rule G(5), nor did it claim that Pickle lacked Article III standing. In fact, in its opposition to Pickle’s motion to stay, the government stated affirmatively that it did not contest Pickle’s constitutional standing, (“[a]t this time, the United States does not contest claimant’s Article III standing”). Rather, the government argued that “Pickle’s claim and answer should be stricken ... for failure to comply with Supplemental Rule G(6).” The government framed the issue in its motion to strike as Pickle’s lack of statutory standing, arguing that “Rule G(6) responses are required to determine standing,” and that “[statutory standing is established through strict compliance with Supplemental Rules G(5) and G(6).”
3. The district court’s order granting the government’s motion to strike
The district court began its three-page order by identifying the Rule authorizing the government’s motion as Rule G(8)(c)(i)(A) and stating that “[t]he government argues that Pickle’s claim and answer should be stricken because Pickle has failed to respond to the government’s Rule G(6) Special Interrogatories.” The court then quoted the government’s recitation of the factual basis supporting its motion:
[T]he United States’ Rule G(6) special interrogatories were mailed to the claimant on July 21, 2011. The claimant’s responses were due by August 15, 2011. The deadline was later extended to September 19, 2011. To date, the Government has not received the claimant’s answers to the Supplemental Rule G special interrogatories and the twenty-one (‘21’) days in which a response is required has lapsed. (Mot. 4:1-7.)
The court acknowledged Pickle’s argument that his motion for a stay effectively responded to the special interrogatories but *975 reiterated its earlier determination that Pickle’s stay motion could not be decided until the government’s motion to strike was resolved.
The court went on to find that the “government’s special interrogatory discovery probes Pickle’s connection to the defendant property,” and then quoted the provisions of Rule G(6), stating that, “[t]he government may serve special interrogatories limited to the claimant’s identity and relationship to the defendant property without the court’s leave at any time after the claim is filed but before discovery is closed,” and that “[ajnswers or objections to these interrogatories must be served within 21 days after the interrogatories are served.” (alterations in court order). The court cited two district court cases from other jurisdictions in which forfeiture claims were stricken based on the claimant’s failure to comply with Rule G(6), and then concluded, “[sjince Pickle’s opposition is an ineffective response to the special interrogatories at issue, the government’s motion to strike Pickle’s claim and answer because of Pickle’s failure to answer the subject special interrogatories is GRANTED.”
4. Application of the law to the facts of this case
Although the district court did not expressly hold that Pickle’s failure to comply with Rule G(6) eviscerated his statutory standing, its analysis suggests that it agreed with the government’s argument that noncompliance with Rule G(6) amounts to a per se statutory standing defect, precluding the court from taking any action in the case. . First, the only facts the court addressed in its order related to the dates on which the government served its special interrogatories and on which Pickle’s responses were due. Additionally, the court struck Pickle’s claim without further discussion after concluding that his motion to stay was “an ineffective response to the special interrogatories,” citing two cases from other districts that had summarily stricken claims for failure to comply with Rule G(6). Finally, the court struck Pickle’s claim without first ordering Pickle to provide adequate discovery responses or imposing some less severe, non-terminating sanction, as courts routinely do when confronted with discovery violations.
These factors signal that the court viewed the Rule G(6) deficiency as something more substantial than a discovery violation. Indeed, if the district court had concluded that striking Pickle’s claim was warranted as a discovery sanction, without giving Pickle an opportunity to cure or reasoning why such opportunity would be futile, we would conclude that decision was an abuse of discretion. See Rule G(8) advisory committee’s note (“[T]he court should strike a claim or answer [under Rule 8(e)(i)(A) ] only if satisfied that an opportunity should not be afforded to cure the defects....”); see also United States v. $154,853.00 in U.S. Currency, 744 F.3d 559, 564 (8th Cir.2014) (holding that the district court abused its discretion in striking a claim for sole reason that claimant failed adequately to respond to G(6) special interrogatories); cf. Toth v. Trans World Airlines, 862 F.2d 1381, 1385 (9th Cir.1988).
Rather, the court appears to have concluded that because “[t]he government’s special interrogatory discovery probes Pickle’s connection to the defendant property,” the court was constrained by standing principles to strike Pickle’s claim forthwith once it determined that he had not strictly complied with Rule G(6). That conclusion is at odds, however, with the both the text of Rule G(8) and the decisions of the several courts of appeals that *976 have applied, this provision in cases where, as here, the claimant’s genuine ownership of the property was not legitimately in dispute.
First, the structure of Rule G(8) — which contains two distinct subparts, each authorizing specifically defined substantive bases on which the government may move to strike — counsels against the interpretation that a claimant’s failure to abide by Rule G(6) necessarily constitutes a standing defect. As noted above, Rule G(8)(c)(i)(B)— the subpart not invoked by the government in this case — explicitly authorizes motions to strike “because the claimant lacks standing.” By contrast, Rule G(8)(c)(i)(A) — the section the government asserts — authorizes such motions “for failing to comply with Rule G(5) or G(6).” Construing a claimant’s failure to comply with Rule G(5) or G(6) to require automatic dismissal, as if it were a statutory standing defect, would appear to render subpart (B) of Rule G(8)(c)(i) redundant, violating a fundamental canon of construction. Christensen v. Comm’r, 523 F.3d 957, 961 (9th Cir.2008) (“We should avoid an interpretation that would render the subsections redundant.”).[2]
It is true, as noted above, that courts frequently refer to compliance with Rule G as a whole as a “statutory standing” requirement under CAFRA. Additionally, the Advisory Committee Note to Rule G(8)(c)(i)(A) emphasizes the “special role” of Rule G(6) “in determining claim standing,” and courts including this one have held that the “purpose” of Rule G(6) special interrogatories is “to gather information that bears on the claimant’s standing.” $133,420, 672 F.3d at 635. While these statements undoubtedly fuel a perception that a claimant’s compliance with Rule G(6) as a whole is a sine qua non to establish his statutory standing, we believe that the better view is the one expressed by our Seventh Circuit colleagues in United States v. Funds in the Amount of $574,840, 719 F.3d 648, 653 (7th Cir.2013): Rule G(8)(c)’s “use of the term ‘standing’ is unfortunate because striking a claim is a decision on the merits. It is not a determination that the claimant has failed to show that the court has jurisdiction and so he should seek relief by an alternative path; it is a determination that he has no interest in the property.”
Other courts of appeals have similarly observed that the distinction between Article III standing and statutory standing is easily blurred, especially where, as here, the claimant asserts an “innocent owner” affirmative defense to forfeiture. For example, the Eighth Circuit has explained:
To qualify as an innocent owner, each claimant must prove she has an ownership interest as defined in the statute. As relevant here, the statuté defines the term “owner” to include “a person with an ownership interest in the specific property sought to be forfeited,” and to exclude “a nominee who exercises no dominion or control over the property.” 18 U.S.C. § 983(d)(6). Although many cases refer to this issue as part of the “standing” inquiry, it is in fact-an ele *977 ment of the innocent owner’s claim on the merits. When claimants have Article III standing but fail to prove an ownership interest that meets these statutory criteria, the “statement that Claimants lacked ‘standing’ is simply another way of stating that Claimants had failed to establish on the merits a property interest entitling them to relief.”
United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1014 (8th Cir.2003) (quoting United States v. Hooper, 229 F.3d 818, 820 n. 4 (9th Cir.2000)); see also United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft, 619 F.3d 1275, 1277 n. 3 (11th Cir.2010).
In this case, Pickle’s affirmative defense alleges that Pickle “has an innocent pos-sessory and/or ownership interest in” the defendant property. To avoid forfeiture on that basis, Pickle must ultimately establish the innocent nature of his interest in the defendant property, and his answers to the government’s special interrogatories are presumably relevant to that issue. But because it cannot reasonably be disputed that Pickle’s interest in the defendant property was sufficient to establish his statutory standing at the inception of the proceedings — recall that both parties alleged that Pickle was the “recorded owner” of the defendant property, and the government further alleged that Pickle and his son both resided on the property— Pickle’s failure to respond to the government’s special interrogatories did not alone vitiate his ability to maintain his claim. See $133,420.00, 672 F.3d at 638 (at motion to dismiss stage, “unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing.”).
We thus agree with the conclusion drawn by other courts of appeals that where a claimant’s Article III and statutory standing are not reasonably in dispute, his failure to respond to Rule G(6) special interrogatories does not, in itself, warrant striking his claim. In United States v. $154,853.00 in U.S. Currency, the Eighth Circuit reversed a lower court’s order striking a claim for noncompliance with Rule G(6) where the claimant had adequately claimed to have earned .the defendant funds through legitimate employment. 744 F.3d at 564, 562. The court reasoned that this allegation about the source of the funds was “sufficient to state a colorable ‘ownership interest’ ” under CAFRA, and observed that the government had in fact conceded the claimant’s statutory standing.to pursue his claim to those funds. Id. at 564 (quoting 18 U.S.C. § 983(d)(6)(A)). Accordingly, the court held that “no special interrogatories were necessary to determine standing,” and that the district court had abused its discretion in striking the claim. Id. Similarly — and despite the fact that it does not share our view that an unequivocal assertion of ownership is sufficient, at the motion to dismiss stage, to establish statutory standing — the Fifth Circuit has held that, where the government had admitted facts sufficient to establish the claimant’s interest in the defendant property, the claimant “need not have supplemented his claim with additional evidence” to establish his statutory standing. $38,570, 950 F.2d at 1113.[3]
Our dissenting colleague’s view that our decision today conflicts with United States v. $133,420.00 in U.S. Currency, 672 F.3d 629 (9th Cir.2012), appears to flow from her belief that there was a legitimate dispute over Pickle’s genuine ownership of the defendant property. Recalling our ob *978 servation in $133,420 that standing is subject to “adversarial testing,” the dissent faults us for “tak[ing] Pickle at his conclu-sory word.” Dissent, p. 986. But this criticism overlooks that Pickle’s unequivocal assertion of ownership in his verified claim echoes the government’s own verified allegations, which likewise assert Pickle’s ownership of the defendant property and additionally assert that Pickle resides on the property.[4]
The dissent’s view that $133,420 compels an outcome contrary to the one we reach is perplexing for additional reasons. First, the central issue in $133,420 was the claimant’s Article III standing; the government’s motion to strike asserted Rule G(8)(c)(i)(B), and the district court explicitly noted that the claimant’s procedural compliance was unchallenged. U.S. v. 133, 420, No. CV-09-8096-PCT-NVW, 2010 WL 2594304, at *4 (D. Ariz. June 23, 2010). Second, the standing issue was before the court on a motion for summary judgment. 672 F.3d at 637. Our analysis thus focused on whether the evidence of record was sufficient to sustain the claimant’s burden to establish his Article III standing at that stage of the proceedings'. See id. at 639. After concluding that the district court correctly discounted the evidentiary value of the claimant’s verified claim because it ambiguously asserted “ ‘an ownership and/or a possessory interest in’ the defendant property,” id. at 636,[5] and that the court permissibly struck the claimant’s interrogatory responses, which contained his only unambiguous assertion of ownership, id. at 640-41, we affirmed the court’s conclusion that the remaining evidence of standing — the claimant’s unexplained physical possession of the currency at the time of seizurfe — was insufficient to withstand the government’s summary judgment challenge. Id. at 644. Nothing about that conclusion is at odds with our decision today.
United States v. $104,250.00 in U.S. Currency, 947 F.Supp.2d 560 (D.Md.2013), likewise is not contrary to our holding. In that case, the funds subject to forfeiture were recovered from the claimant’s airplane carry-on bag, where they were discovered inside a suspiciously wrapped package to. which a drug-detection dog alerted. Id. at 561-62. The claimant’s verified claim “stated only that ‘he[r] interest in the property herein is an ownership and possessory interest.’ ” Id. at 562 (alteration in original). She later amended her claim to add that “[tjhis money ... is proceeds of my personal investments in the entertainment industry, and proceeds from my mother’s estate.” Id. (omission in original). The court concluded that this assertion of her interest in the property *979 did not comply with Rule G(5) and granted the government’s motion to strike her claim on that basis. Although the government had not issued special interrogatories pursuant to Rule G(6), the court observed that “[i]n cases like this one, the Government needs to use the special interrogatories to test the Claimant’s assertion that she is the true owner of the defendant property and not merely a courier for a third party. But to do that, the Government must know what assertion of ownership the Claimant is making.” Id. at 565.
The court’s discussion in $104,250.00 simply illustrates the unremarkable proposition that Rule G(6) interrogatories may be necessary to ascertain whether a claimant’s interest is sufficient to establish his statutory standing to contest a forfeiture, particularly when the claim itself offers little explanation of the claimant’s connection to the property. But neither $104,250.00, nor any other case we . have reviewed, persuades us that in the circumstances of this case, Pickle’s statutory standing was contingent on his compliance with Rule G(6).
Finally, we note that the government now argues, for the first time, that Pickle did not comply with Rule G(5), and that his “bare assertion of ownership” was inadequate to establish his statutory standing. Even assuming that these arguments accurately reflect the law of this circuit, as opposed to that of the Fifth Circuit, from which defendant’s only citation emanates, see $38,570 U.S. Currency, 950 F.2d at 1111, and with which at least one other circuit has expressly disagreed, see United States v. $196,969.00 U.S. Currency, 719 F.3d 644, 645-46 (7th Cir.2013) (a “bald assertion” of ownership strictly complies with Rule G(5)), the government has given us no reason to deviate from our general practice of declining to consider arguments raised for the first time on appeal. United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990).
CONCLUSION
Because the district court’s decision to strike Pickle’s claim was based on the legally erroneous belief that Pickle’s failure to comply with Rule G(6) vitiated his statutory standing to contest the forfeiture and required dismissal of his claim forthwith, and because Pickle’s failure to answer the G(6) interrogatories would not have warranted striking his' claim as a discovery sanction without giving him an opportunity to cure his lack of response, we REVERSE the judgment of default and final judgment of forfeiture and REMAND for further proceedings consistent with this opinion.

. A claim and answer was also filed by Leung and Betty Chinn, who held liens on the defendant property. Their claim is not at issue on appeal.

. We respectfully disagree with the dissent's view that our decision "renders meaningless” the text of Rule G(8), which "unequivocally provides that the government may move to strike a claim due to the claimant's failure to comport with the requirements of Rule G(6).” Dissent, p. 985. Rule G(8) indeed authorizes the government to file a motion on this basis, but it does not compel the court to grant the motion upon finding non-compliance with Rule G(6). To the contraiy, as the Advisory Committee Note to Rule G(8) makes explicit, "the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15. Not every failure to respond to subdivision (6) interrogatories warrants an order striking the claim.”

. Although the court concluded that the claimant had standing to challenge the forfeiture proceeding, it upheld the district court’s decision to strike his claim and answer on the basis that they were untimely.

. Nor does our decision deprive the government of its entitlement to "adversarial testing” of Pickle's continued standing. See dissent, p. 985; $133,420, 672 F.3d at 642. The government could have moved to compel substantive answers to its special interrogatories, which the court could have granted notwithstanding Pickle’s Fifth Amendment objection, as our discussion in $133,420 suggests. See id. at 637, 643-44. Indeed, our decision in no way divests district courts of their authority to compel compliance with Rule G(6) or, indeed, to strike a claim pursuant to Rule G(8)(c)(i)(A) based on a claimant's persistent failure to do so.

. Specifically, although we held that the claimant’s verified claim "constitutes evidence for purposes of opposing the government's motion for summary judgment,” we concluded that its use of the "and/or” formulation made it insufficiently specific regarding the nature of the asserted interest to establish Article III standing. 672 F.3d at 640 (citation omitted). The dissent mistakenly states that Pickle’s verified claim employs the same "and/or” formulation. Dissent, p. 986 and 988 n. 7. In fact, Pickle's verified claim states . unambiguously, “Byron Pickle is the recorded owner of the defendant real property.”