[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 6, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10380

_____

D. C. Docket No. 03-20526-CV-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

$125,938.62
Proceeds of certificates of deposit
number 1271734730,
$60,851.73
number 1271736329, et al.,

Defendants,

ARNOLDO JOSE ALEMAN CARDENAL,
ANA EUGENIA FLORES,
JOSE GRULLON,
NORMA L. FLORES,
MARIA ALEJANDRA ALEMAN CARDENAL,
CARLOS MIGUEL ALEMAN CARDENAL,
MARIA DOLORES ALEMAN CARDENAL,

Claimants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 6, 2008)**

Before TJOFLAT and BLACK, Circuit Judges, and RESTANI,[*] Judge.

BLACK, Circuit Judge:

In this civil forfeiture action brought under the Civil Asset Forfeiture

Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, the district court found seven

certificates of deposit held in the names of Claimant-Appellants Maria Alejandra

Alemán, Norma Flores, José Grullon, and Ana Flores were subject to forfeiture

under 18 U.S.C. § 981(a)(1)(B) because they were derived from funds stolen from

the Nicaraguan treasury during the presidency of Arnoldo Alemán.

On appeal, Appellants contend the Government failed to meet its burden of

linking the certificates of deposit to embezzled funds.  Although the Government

now concedes that key evidence on which it relied at trial was inadmissible, it

asserts the properly admitted evidence was sufficient to show, by a preponderance

of the evidence, that the funds are subject to forfeiture.  Having reviewed the

---

[*] Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

entire record, we affirm the judgment of the district court with respect to certificates number 1275218528 and 1263604528 because the evidence properly presented to the court with respect to those funds was minimally sufficient to meet the Government's burden of proof. However, because the Government failed as a matter of law to meet its burden of proving by a preponderance of the evidence that certificates number 127173430, 1256700028, 1279734728, 1271734729, and 1271737129 were derived from funds embezzled from the Nicaraguan treasury, we reverse the district court's order of forfeiture with respect to those certificates.

## I. BACKGROUND

### A. The Certificates of Deposit

During the late 1990s, while Arnoldo Alemán was President of Nicaragua, millions of dollars disappeared from the Nicaraguan national treasury. Around the same time, Byron Jerez, a friend of the Alemán family and a high-ranking official working in the Nicaraguan Treasury Department, withdrew funds from two entities, Consultores Corporativos (a company with which he was affiliated) and the Nicaraguan Democratic Foundation (of which he was a founding member). Jerez used the money to purchase certificates of deposit from Terrabank in Coral Gables, Florida, in the name of Alemán and several of his relatives. Alemán and his wife also opened several certificates of deposit at Terrabank during this period.

3

Some of these certificates of deposit were later assigned to other members of the Alemán family.

In March 2003, the United States Government filed a civil forfeiture action in the United States District Court for the Southern District of Florida, contending that eight of the Terrabank certificates of deposit were subject to forfeiture because they were derived from funds stolen from the Nicaraguan treasury.[1] The chart below summarizes the relevant details of each certificate at issue in this case:

| Certificate No. | Amount | Opened | Original Owner | Present Owner | Purchased by | Funds from |
|---|---|---|---|---|---|---|
| 127173430 | $100,000 | 4/17/98 | Arnoldo or Maria Alejandra Alemán | Maria Alejandra Alemán | Byron Jerez | Nicaraguan Democratic Foundation |
| 1256700028 | $75,000 | 3/6/98 | Arnoldo or Amelia Alemán | Norma Flores | Arnoldo and Amelia Alemán | Milerstone Business |
| 1279734728 | $100,000 | 4/17/98 | Arnoldo Alemán or Carlos Alemán | José Grullon | Byron Jerez | Nicaraguan Democratic Foundation |
| 1271734729 | $100,000 | 4/17/98 | Arnoldo Alemán or Arnoldo José Alemán | Ana Flores | Byron Jerez | Nicaraguan Democratic Foundation |
| 1271737129 | $75,000 | 5/26/98 | Arnoldo Alemán or Carlos Alemán | José Grullon | Arnoldo Alemán | Milerstone Business |

---

[1] The Government later abandoned its claim with respect to one of the certificates, leaving only seven at issue in this action.

| 1275218528 | $75,999 | 4/22/99 | Arnoldo Alemán or Carlos Alemán | José Grullon | Byron Jerez | Consultores Corporativos |
| 1263604528 | $75,000 | 4/22/99 | Arnoldo Alemán | Ana Flores | Byron Jerez | Consultores Corporativos |

(Dist. Ct. Findings of Fact & Conclusions of Law, at 2-3.)

After a few procedural false starts (including an appeal to and remand from this Court), the case proceeded to a bench trial.

B. *The Government's Case*

At trial, the Government attempted to present several summary witnesses, including Francisco Saavedra, a member of the U.S. Customs Asset Forfeiture Group, and Ivan Lara, the Nicaraguan lawyer who had prosecuted Alemán and Jerez on charges of embezzlement, money laundering, and other fraud. (Alemán was convicted of the charges against him; Jerez was acquitted.)

Unfortunately, many of the Government's key witnesses, including Saavedra and Lara had minimal non-hearsay testimony to offer; therefore, the Government's case turned primarily on the adequacy of the documentary evidence admitted at trial. Among that evidence was an audit conducted by the Nicaraguan Government and prepared by witness José Calderón. According to Calderón's testimony and portions of the audit, which were translated into English and admitted into evidence, millions of dollars were illegally removed from the

5

Nicaraguan treasury between 1997 and 2002, and were diverted to unauthorized, "extra-budgetary" funds controlled by the Ministry of the Presidency. Calderón testified that the audit did not trace any pilfered funds to the Terrabank accounts.

In addition to the audit evidence, the Government introduced through Lara numerous authenticated checks and other financial documents which Lara had obtained from Nicaraguan banks. The checks and their accompanying notations were not translated into English, and the district court did not permit the prosecutor to provide testimony regarding the meaning or relevance of the financial documents on the ground that such testimony would be hearsay coming from someone other than the records custodian. The Government argued the documents revealed money had been routed from presidential funds to a changing house and from the changing house to Consultores Corporativos, a business with which Jerez was affiliated. The Government produced no financial documents linking embezzled money to either Milerstone Business or the Nicaraguan Democratic Foundation.

Of central importance to the Government's case was Exhibit 67, a copy of the final judgment of criminal conviction in Jerez and Alemán's Nicaraguan prosecution. Over the Claimants' strong objection, and after extensive discussion regarding the admissibility of the evidence, the district judge admitted two small

portions of the judgment under the public records exception to the hearsay rule. Specifically, the court admitted the fact of Alemán's conviction for "laundering of money and/or assets proceeding from illegal activities, fraud, embezzlement of public monies, peculation, and association and instigation to commit crimes and electoral crime." (*See generally* Trial Trans. at 54:3-21, 80:19-81:9; *see also* Certified Translation of Final Decision of the Nicaraguan First Criminal Court of the District, penultimate page.) The court also admitted a portion of the judgment acquitting Jerez, but suggesting he was guilty in fact of aiding and abetting the crimes of which Alemán had been convicted and that Jerez had done so in furtherance of Alemán's financial interests.

To bolster its claim that the money in the certificates of deposit could not have come from Alemán's personal holdings, the Government admitted financial disclosure statements filed by Alemán in 1997 and 2000, which list modest real property holdings and income.

C. *The Claimants' Case*

After the Government rested, the district court heard testimony from each of the claimants and from a friend of the Alemán family, who argued the money in the certificates of deposit had come from legitimate family business endeavors and from legitimate expenditures from the Nicaraguan Democratic Foundation. Maria

Alejandra Alemán testified that her family had been in the coffee and cattle business for more than a century; she could not, however, provide any details regarding the family business. The other claimants and the remaining witnesses provided similarly vague testimony regarding the origin of the funds used to open the certificates of deposit.

*D. The District Court Order*

On December 21, 2006, the district court issued an opinion holding the Government had met its burden of proving funds from the Nicaraguan Democratic Foundation, Milerstone Business, and Consultores Corporativos (the monetary sources for the certificates of deposit) were "traced to illicit activities by President Aleman and Byron Jerez." (*See* Dist. Ct. Findings of Fact & Conclusions of Law, dkt. #165, at 3.) Specifically, the district court found:

> [With respect to the five certificates of deposit purchased by Jerez], there was clear commingling of illicit funds with stolen money in the accounts of "Consultores Corporativos" and the Nicaraguan Democratic Foundation. The United States established that the certificates of deposit were purchased shortly after President Aleman's assumption of the Presidency of Nicaragua and millions of dollars were removed from Presidency accounts by his subordinates, specifically Byron Jerez, the actual purchaser of the certificates. The evidence showed that funds moved from the office of the Nicaraguan Presidency to a money exchange house, Multicombrios [sic], and then to Jerez's corporations, including Consultores Corporativos. Until then, Aleman's financial transactions in the United States had been modest. The Government also proved that the majority of the

8

certificates of deposit were not purchased by the Alemán family and that Aleman's financial disclosure did not reflect the existence of a large amount of cash.

In addition, the Government introduced the December 6, 2003 conviction and twenty year sentence of President Alemán for money laundering and embezzlement. Byron Jerez was "acquitted," but the Nicaraguan Court found that he did participate in the crime of fraud and used his "resourcefulness" to execute the illicit complex financial transactions. His "acquittal" was based upon a [sic] "principles of Proportionality and Opportunity." This evidence is clearly sufficient for the Government to meet its burden.

(Id. at 4-5.) Additionally, the district court found the testimony of the claimants not credible, and determined none had succeeded in proving he or she was an innocent owner of the funds in question. (*Id.* at 7.) Consequently, the court ordered all seven certificates forfeited to the Government. (*Id.* at 8.)

## II. DISCUSSION

On appeal, Appellants raise several challenges to the district court's forfeiture decision. Two require discussion: Appellants' contention that (1) the district court erred by admitting facts contained in the Nicaraguan judgment of conviction; and (2) the Government failed to adduce sufficient evidence to meet its burden of connecting the certificates of deposit to embezzled money.

*A. Admissibility of Foreign Judgment of Conviction*

We begin with the question whether the district court erred by admitting the

Nicaraguan judgment of conviction and facts found in it and by relying on those facts to find Byron Jerez embezzled funds for the purpose of advancing Alemán's financial interests. We review evidentiary rulings for an abuse of discretion; "[h]owever, basing an evidentiary ruling on an erroneous view of the law constitutes an abuse of discretion *per se.*" *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005).

The district court admitted the foreign judgment and facts found in it under the hearsay exception permitting courts to consider "factual findings resulting from an investigation made pursuant to authority granted by law . . . ." Fed. R. Civ. P. 803(8)(C). Before oral argument, we invited the parties to address the applicability of this Court's decision in *United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994), which holds that Rule 803(8)(C), by its plain language, does not apply to judicial findings of fact. *Id.* at 1554.

In response, the Government concedes that the factual findings in the Nicaraguan judgment were improperly admitted. The fact of Alemán's conviction and the sentence he received remain admissible pursuant to Fed. R. Evid. 803(22); however, none of the relevant facts found in the judgment of conviction were admissible in the district court. Consequently, when evaluating Appellants' challenge to the sufficiency of the evidence, we may not consider facts drawn from

10

the Nicaraguan judgment of conviction.

## B. *Sufficiency of the Evidence*

Property located in the United States is subject to civil forfeiture when it is "derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation," 18 U.S.C. § 1956(c)(7)(B), so long as the offense against the foreign nation (1) involved "embezzlement of public funds by or for the benefit of a public official," *id.* § 1956(c)(7)(B)(iv); (2) would be punishable within the jurisdiction of the foreign nation by death or imprisonment for more than one year; and (3) would be punishable under the laws of the United States by imprisonment for more than one year if the act or activity constituting the offense had occurred within the jurisdiction of the United States. 18 U.S.C. § 981(a)(1)(B)(i)-(iii).

At trial, the Government contended Alemán, assisted by his friend and former internal revenue secretary Byron Jerez, embezzled money from the Nicaraguan treasury, and after laundering it, purchased the seven certificates of deposit which are the subject of this forfeiture action. Embezzlement is an offense that is punishable by more than one year's imprisonment in both Nicaragua and the United States, *see* Ex. 67 (Alemán's judgment of conviction for 20 years' imprisonment) and 18 U.S.C. § 641 (embezzlement of more than $1,000 in federal

11

funds or property punishable by up to ten years' imprisonment); therefore, if the money used to fund the certificates of deposit was embezzled, the certificates are forfeitable to the United States Government.

Before the Civil Asset Forfeiture Reform Act took effect, in order to prevail at a forfeiture hearing, the Government was required to establish only probable cause to believe the property in question was connected to a crime. *United States v. Bowman*, 341 F.3d 1228, 1233-34 (11th Cir. 2003). The burden then shifted to the claimant to establish by a preponderance of the evidence that the property was not connected. *Id.* CAFRA was "designed to rectify an unfairness to the individual vis-a-vis the government" by "forcing the Government to prove that property is subject to forfeiture as opposed to forcing the property owner to prove his property is not subject to forfeiture." *United States v. Bowman*, 341 F.3d 1228, 1236 (11th Cir. 2003) (citing *United States v. Real Property in Section 9, Town 29 North*, 241 F.3d 796, 799 (6th Cir. 2001)). Under CAFRA the Government bears a heavier burden: it must now prove by a preponderance of the evidence that property is subject to civil forfeiture. 18 U.S.C. § 983(c)(1).[2]

---

[2] When the government claims that property is subject to forfeiture because it "was used to commit or facilitate the commission of a criminal offense," the Government must "establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Claimants contend § 983(c)(3) is relevant to this case; however, the Government does not contend the certificates of deposit were "used to commit or facilitate" embezzlement: it argues the certificates were purchased with the fruits of the embezzlement. Consequently, the

12

In an appeal from an *in rem* civil forfeiture, we review the district judge's factual findings for clear error, and his conclusions of law *de novo*. *See United States v. Carrell*, 252 F.3d 1193, 1198 (11th Cir. 2001). At oral argument, we asked the Government to submit to us what should have been provided to the district court: a chart showing the evidentiary connection between money stolen from the Nicaraguan treasury and the money used to fund the certificates of deposit at issue in this case. Appellee's submission clarifies the relevance of the financial documents submitted at trial relating to payments made from the presidential treasury, through Multicambios, to foreign businesses and ultimately to Consultores Corporativos. From Consultores Corporativos, Jerez drew the funds used to purchase certificates of deposit numbers 1275218528 and 1263604528. The district court did not clearly err by finding this evidence was sufficient to meet the Government's burden of proof with respect to those certificates.[3]

Government was required to demonstrate only that the funds were derived from or were traceable to, any proceeds obtained directly or indirectly from the embezzlement of public funds from the Nicaraguan treasury.

[3] Certificates number 1275218528 was owned by José Grullon, while certificate number 1263604528 was owned by Ana Flores. At trial, both claimants raised an innocent owner defense under 18 U.S.C. § 983(d)(1). Innocent ownership is an affirmative defense defined narrowly by the statute. Under the statutory definition, an innocent owner must be either an owner whose interest in the property exists at the time the conduct giving rise to the forfeiture takes place, *id.* § 983(d)(2)(A), or one who acquired a property interest after the conduct giving rise to the forfeiture has taken place, *id.* § 983(d)(3)(A). With respect to this second class, the

The same cannot be said with respect to the evidentiary support for forfeiture of the remaining certificates of deposit. As the Government's charts themselves reveal, there is no direct evidence connecting certificates of deposit numbers 127173430, 1256700028, 1279734728, 1271734729, and 1271737129 to money embezzled from the Nicaraguan treasury.

The Government contends their case with respect to these certificates was circumstantial, and points to the following evidence: the audit which showed money was stolen from the Nicaraguan treasury during Alemán's presidency; Alemán's financial statements, which showed he had modest personal holdings at the time the certificates of deposit were purchased; evidence that other certificates purchased by Jerez were derived from embezzled funds and that some of Jerez's personal assets were forfeited to the United States in an unrelated forfeiture action; documents from Terrabank showing Jerez purchased three of the five certificates

---

statute defines an innocent owner as one who, at the time that person acquired the interest in the property,

> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); *and*
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

*Id.* § 983(d)(3)(A) (emphasis added). Neither Grullon nor Flores testified that he or she was a "bona fide purchaser or seller for value" of the certificates of deposit. Under the plain language of the statute, then, they would not have been entitled to raise an innocent ownership defense even if the district court had credited their testimony.

at issue; and the fact Jerez had a connection to the Nicaraguan Democratic Foundation.

Circumstantial evidence is one thing; speculation another. The Government's case with respect to funds derived from the Nicaraguan Democratic Foundation amounted to little more than an invitation for the district court to conclude that because Jerez used embezzled funds to purchase certificates of deposit 1275218528 and 1263604528, he must have done the same when he purchased certificates 127173430, 1279734728, and 1271734729, with funds from the Nicaraguan Democratic Foundation, an organization which, according to the uncontroverted testimony presented at trial, had no restrictions on the use of its funds. The evidence was insufficient as a matter of law to meet the Government's burden with respect to these three certificates.

With respect to certificates 1256700028 and 1271737129—purchased by Arnoldo and Amelia Alemán in the amount of $75,000 each—the Government places considerable emphasis on Appellants' failure to produce business records proving the certificates were funded with proceeds from the Alemán family's coffee or livestock business, rather than with embezzled funds. Appellants, however, were under no obligation to come forward with evidence of their rightful ownership. Rather, it was the Government's burden to show the money used to

15

purchase the certificates of deposit was derived from embezzled funds—and that it did not do. Consequently, we hold the evidence was insufficient as a matter of law to support the district court's forfeiture order with respect to these two certificates, as well.

## III. CONCLUSION

Given the evidence adduced at trial, the district court did not clearly err in finding the Government met its burden of proving certificates of deposit 1275218528 and 1263604528 were subject to forfeiture because they were derived from funds stolen from the Nicaraguan treasury. We affirm the court's order of forfeiture with respect to those two certificates. With respect to certificate numbers 127173430, 1256700028, 1279734728, 1271734729, and 1271737129 , however, the Government failed to meet its burden to present evidence of a connection between those funds and funds stolen from the Nicaraguan treasury. Therefore, we reverse the denial of the district court with respect to those five certificates.

**AFFIRMED IN PART and REVERSED IN PART.**