In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3451

UNITED STATES OF AMERICA,

*Appellee.*

*v.*

FUNDS IN THE AMOUNT OF $239,400,

*Defendant,*

JOHN R. VALDES and TRACEY M. BROWN,

*Claimants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 4448 — **James B. Zagel**, *Judge.*

ARGUED MAY 22, 2015 — DECIDED JULY 28, 2015

Before EASTERBROOK, WILLIAMS, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal requires us to enforce recent reforms in civil forfeiture law. The Civil Asset Forfeiture Reform Act of 2000 put the burden on the government to prove by a preponderance of evidence that property is forfeitable. 18 U.S.C. § 983(c). Rule G(9) of the Federal

Rules of Civil Procedure, adopted in 2006, entitles a claimant of the property to a jury trial on whether assets are forfeitable. In this case, however, the government persuaded the district court to require the claimants, in order to prove their standing, to show their claims to the disputed currency are "legitimate." Based on this legal error, the district court held that claimants had failed to make that showing and granted summary judgment for the government. We reverse. By blending standing and the merits, the district court effectively nullified recent measures protecting claimants in civil forfeiture cases.

I.   *Factual and Procedural Background*

Claimant-appellant John Valdes was traveling from Boston to Los Angeles by train. During a layover in Chicago, DEA agents approached Valdes because he fit their profile of a drug courier: He was traveling on a one-way ticket for a private sleeper car, and his ticket had been purchased just before departure with a credit card issued to another person. The agents searched Valdes's luggage and found four bundles of cash totaling $239,400. Each bundle had been covered with several layers of packaging: innermost was a layer of plastic wrap, then tin foil, and then rubber bands to hold each bundle together. Finally, each bundle was wrapped in a brown paper bag.

Valdes told the DEA agents that the money was his and that he had packed it that way. He told them he was traveling to California to purchase computers for his computer recycling business. No drugs were found in his luggage. We are told, however, that a drug-sniffing dog alerted to the bag containing the currency. This alert, assuming the dog was

trained and functioning properly, signaled an odor of drugs on the bag.[1]

The DEA agents did not arrest Valdes. They told him that he was free to go but seized the currency for further investigation. Valdes provided his personal identification and contact information to the agents. They gave him a receipt for the seized currency.

The government then filed a civil forfeiture complaint against the currency pursuant to 21 U.S.C. § 881(a)(6) alleging that the currency was furnished or intended to be furnished for a controlled substance. Valdes filed a claim to the currency asserting an ownership and/or possessory interest in the property. Tracey Brown filed a claim to the currency as well. Her claim is based on a community property and innocent ownership interest she has in the property as Valdes's wife. Valdes and Brown also filed answers to the complaint.

After Valdes and Brown filed their claims to the property but before they filed their answers to the complaint, the government served special interrogatories under Rule G(6). Rule G is a supplement to the Federal Rules of Civil Procedure that applies to *in rem* actions like this forfeiture case. Rule G(6)(a) permits the government to "serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time

---

[1] Further details of this encounter between Valdes and the DEA agents were the subject of dispute in the district court. The court held an evidentiary hearing on Valdes's motion to suppress. At the hearing Valdes and the DEA agents offered two different versions of events as to how the search happened. The district court rejected Valdes's version of events, credited the agents' version, and denied the motion. Valdes does not appeal that ruling.

after the claim is filed." The claimants provided limited responses to the interrogatories. Valdes asserted that he is the owner of the defendant currency and that it was in his possession when it was seized. The claimants also objected to the scope of the interrogatories.

Ultimately the government moved to strike both sets of claims and answers, arguing that the claimants failed to respond to the interrogatories, see Rule G(8)(c)(i)(A), and that they lacked standing, see Rule G(8)(c)(i)(B). The government also moved for summary judgment pursuant to Rule 56, arguing that even if the claims were not struck, the claimants had not produced sufficient evidence to create a genuine issue of material fact regarding their standing to contest the forfeiture. The district court said that several of the claimants' responses to the interrogatories were essentially "non-responses." But rather than striking the claims and answers on that ground, the district court instead drew an adverse inference against the claimants with respect to standing. In its opinion granting the government's motions, the district court cited this adverse inference, along with credibility determinations it made and circumstantial evidence the government presented at the evidentiary hearing on the motion to suppress. Valdes and Brown appeal.

II. *Analysis*

The issue at the heart of this appeal is the boundary between standing, Article III or otherwise, and the merits in a civil forfeiture proceeding. Before the district court the government argued that Valdes and Brown lack standing to pursue their claims under Article III of the Constitution. The district court granted summary judgment because it found that the government had "presented considerable and com-

pelling circumstantial evidence" that the claimants have "no legitimate interest" in the $239,400. On appeal the government argues that summary judgment was appropriate because Rule G requires a claimant to demonstrate not just Article III standing but also legitimate ownership of the defendant property.

Rule G(8)(c)(ii)(B) states that a claimant bears the "burden of establishing standing by a preponderance of the evidence." At the pleading stage a plaintiff need only allege, not prove, facts establishing standing. *United States v. $196,969 U.S. Currency*, 719 F.3d 644, 646 (7th Cir. 2013), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). Beyond the pleading stage, standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. These principles are accepted by all parties here. The disagreement concerns "the manner and degree of evidence required" for a claimant to establish standing at the summary judgment stage. We review *de novo* the district court's answer to this legal question. See *United States v. 5 S 351 Tuthill Rd., Naperville, Ill.*, 233 F.3d 1017, 1021 (7th Cir. 2000).

We have not addressed this precise question before, but other circuits have. The Tenth Circuit, for example, has summarized the prevailing view:

> As we view it, the government cannot prevent every person unwilling to completely explain his relationship to property that he claims to *own*, and that is found in his possession and control, from merely *contesting* a forfeiture of that property in court. It may well be that forfeiture ultimately will prove appropriate, but

> we find it obvious that such a claimant risks in-
> jury within the meaning of Article III and thus
> may have his day in court.

*United States v. $148,840 in U.S. Currency*, 521 F.3d 1268, 1276 (10th Cir. 2008) (reversing summary judgment for govern-ment in civil forfeiture action); see also *United States v. $133,420 in U.S. Currency*, 672 F.3d 629, 640 (9th Cir. 2012) (an "assertion of ownership, combined with … possession of the currency at the time it was seized, would be enough to estab-lish … standing for purposes of a motion for summary judgment").[2]

We agree with these decisions and hold that an assertion of ownership combined with some evidence of ownership is sufficient to establish standing at the summary judgment

---

[2] The government attempts to distinguish these cases by pointing out that in neither case had the district court held an evidentiary hearing where it made credibility findings and otherwise decided disputed fac-tual issues. But the district court made those findings to decide a motion to suppress, a matter distinct from the merits of the case. To use those factual findings to decide legitimate ownership, which goes to the heart of the merits in a forfeiture case, would invade the province of the jury. See *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003). This is why the Ninth and Tenth Circuit decisions we follow took care to separate standing from the merits. Another route to the same result is the Eighth Circuit view that, insofar as standing is inter-twined with legitimate ownership, at the summary judgment stage that issue "must be decided in accordance with Rule 56 standards, viewing the evidence in the light most favorable to" the non-movant and "leaving credibility issues to the ultimate finder of fact." *Id*.; see also *DDB Technol-ogies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291 (Fed. Cir. 2008) ("the degree of intertwinement of jurisdictional facts and facts un-derlying the substantive claim should determine the appropriate proce-dure for resolution of those facts"); *id*. at 1292 n.4 (collecting cases).

stage of a civil forfeiture action. We also hold that possession of currency when it was seized counts as some evidence in this context. To explain, we discuss first Article III standing and then the notion of "statutory standing" under Rule G. Because we are reviewing a grant of summary judgment, we must neither "decide which party's version of the facts is more likely true" nor "resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

A. *Article III Standing*

The "irreducible constitutional minimum of standing" under Article III consists of three elements. *Lujan*, 504 U.S. at 560. First, the plaintiff must have suffered an injury in fact, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical. Second, there must be a causal connection between the injury and the challenged action of the defendant. Third, it must be likely, as opposed to merely speculative, that the injury would be redressed by a favorable decision. *Id.* at 560–61.

"In response to a summary judgment motion" the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* at 561, quoting Fed. R. Civ. P. 56(e). Here, Valdes asserted in sworn responses to the special interrogatories that he is the owner of the defendant currency and that it was in his possession when it was seized. Following the Ninth and Tenth Circuits, this is sufficient evidence for a claimant to establish standing at summary judgment. See *$133,420*, 672 F.3d at 640; *$148,840*, 521 F.3d at 1276; see also *Lujan*, 504 U.S. at 561–62 (if the plaintiff is "challenging the legality of government action" and is him-

self the "object of the action" then "there is ordinarily little question" that the plaintiff can establish standing at summary judgment).

B. *Rule G and "Statutory Standing"*

The government argues that Article III standing is not sufficient, though, because Rule G requires more than Article III standing, and in particular it requires a claimant to establish that his or her claim to the defendant property is "legitimate" in order to show standing.

It is true that Rule G requires a claimant to comply with certain procedural requirements. See *United States v. Real Property Located at 17 Coon Creek Rd., Hawkins Bar California*, 787 F.3d 968, 973–74 (9th Cir. 2015). Many courts have referred to these procedural requirements as "'statutory standing' and have held that it is established through compliance with Rule G." *Id.*

The main procedural requirements imposed by Rule G are that "the claimant must show that he has filed a timely claim and answer, that the claim is properly verified, and that he has identified himself and alleged an interest in the property." Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 9-4, 326–27 (2d ed. 2013) (footnotes omitted). The prevailing view is that such procedural requirements are the only unique requirements imposed by Rule G. See *id.* at 326 ("Most courts hold that to establish statutory standing the claimant simply has to show that he has satisfied all of the pleading requirements in § 983(a)(4) and Rule G(5)."). We agree and hold that satisfying procedural requirements—not demonstrating "legitimate" ownership—is all that Rule G

asks of claimants aside from showing constitutional standing.

The government argues, however, that two of our recent decisions recognize a requirement that claimants demonstrate "legitimate" ownership of the defendant property to show "standing" under Rule G. See *United States v. Funds in the Amount of $574,840*, 719 F.3d 648 (7th Cir. 2013); *United States v. $196,969 U.S. Currency*, 719 F.3d 644 (7th Cir. 2013). The government misreads those cases.

In both *$574,840* and *$196,969* we reversed judgments of forfeiture. Both cases recognized that Rule G requires more of claimants than mere compliance with Article III. See *$574,840*, 719 F.3d at 651 ("Rule G(5) requires more, but the more is an addition to what is required to plead Article III standing."); *$196,969*, 719 F.3d at 646 ("The government has confused the requirement of pleading Article III standing … with the additional requirements imposed on claimants in civil forfeiture proceedings by Rule G(5)."). But those cases are also clear on two points that, taken together, foreclose the government's interpretation of them.

First, pleading Article III standing in a civil forfeiture action "requires no more than alleging that the government should be ordered to turn over to the claimant money" held by it that belongs to him. *$196,969*, 719 F.3d at 646. Second, the "more" that Rule G requires beyond compliance with Article III is, as noted above, compliance with the simple procedural requirements listed in Rule G(5). *Id.* at 645–46. A claim must be "signed under penalty of perjury." *Id.* at 645. It must be "served on the government." *Id.* at 646. It must "identify the specific property claimed" and "the claimant." *Id.*, quoting Rule G(5)(a)(i)(A)–(B). The last relevant re-

quirement of Rule G(5), and the one at issue in *$196,969*, was that the claimant must state what interest he or she has in the property. *Id.*

In *$196,969* the district court had held that to comply with that last requirement of Rule G(5), a claimant must state "how he obtained possession of the currency, including, but not limited to, the person(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency." *Id.* We rejected that view. We said that a "bald assertion of interest … would strictly comply with" Rule G(5). *Id.* And we explained that no "additional requirements can be extracted from the terse and crystalline language of the subdivision on which the government and the district court place their entire reliance." *Id.* at 647. There is no basis in our precedents for the view that Rule G requires a claimant to demonstrate "legitimate" ownership of the defendant property to show standing.

The government also presents a policy argument for its interpretation of Rule G. It argues that requiring claimants to demonstrate legitimate ownership will discourage frivolous claims. We assume this is true, but we explained in *$196,969* that this policy concern is not a sufficient reason for us to force claimants to "spell out" their claims under Rule G. *Id.*, 719 F.3d at 647 ("This is an argument for amending the rule, which does not require 'spelling out,' rather than for judicial elaboration of it."). Our limited approach in *$196,969* is similar to that adopted by the Supreme Court in a recent case about "statutory standing." "Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action

that Congress has created merely because 'prudence' dictates." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. —, 134 S. Ct. 1377, 1388 (2014) (citation omitted).

In any event, the claims of Valdes and Brown in this case are not frivolous. They may or may not succeed on the merits, but that is a different matter. See *United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003) ("Courts should not … conflate the constitutional standing inquiry with the merits determination that comes later."); see generally Cassella, *Asset Forfeiture Law* § 10-2, 332 (explaining that "standing and ownership come into play at different stages in the civil forfeiture case and are governed by different bodies of law").

This is not a case where a claimant asserts ownership of a painting stolen from the National Gallery in Washington. See *$574,840*, 719 F.3d at 653. Nor is it a case, to take a more serious concern mentioned in the cases, where a claimant generated frivolous claims by reading published forfeiture notices. See *id.*; Cassella, *Asset Forfeiture Law* § 9-4, 325. Valdes was in possession of the money when it was seized, and he claims ownership. Our holding, that an assertion of ownership combined with evidence that the claimant was in possession of currency when it was seized is sufficient to establish standing at the summary judgment stage of a civil forfeiture action, will not open the floodgates to frivolous claims.[3]

---

[3] The government also argues that granting its motion to strike was proper because claimants failed to comply with Rule G(6), requiring them to respond to special interrogatories. The Advisory Committee Note to Rule G(6) explains that it permits "the government to file limited interrogatories at any time after a claim is filed to gather information that

The Supreme Court recently clarified and narrowed standing doctrine. In *Lexmark*, the Court reminded us that federal courts have a "virtually unflagging" obligation to decide cases within their Article III jurisdiction. 134 S. Ct. at 1386, quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. —, 134 S. Ct. 584, 591 (2013). The Court also cautioned that labels like "prudential standing" and "statutory standing" are misleading and should be avoided. *Id.* at 1387 n.4. Rather than relying on these supposed standing concepts that are not rooted in Article III, we should ask whether Valdes falls within the class of people whom Congress has authorized to contest a forfeiture under Rule G. See *id.* at 1387. The answer is yes.

Apart from Rule G's textual silence on any requirement to prove "legitimate" ownership, the most compelling reason to reject such a requirement as part of the Rule G standing inquiry is that it would undermine the statutes governing civil forfeiture. The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) placed the burden on the government to prove by a preponderance of evidence that property is forfeitable. 18 U.S.C. § 983(c). CAFRA thus shifted the burden of proof in civil forfeiture actions by "forcing the Govern-

---

bears on the claimant's standing." While claimants objected to the scope of the interrogatories, Valdes did assert, under oath and unequivocally, that he owns the defendant property and that it was in his possession when it was seized. These facts are sufficient for a claimant to establish standing at summary judgment. Further special interrogatories and responses were not necessary to determine standing, so the district court would have abused its discretion if it had granted the motion to strike on this alternate ground. See *United States v. $154,853 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (reversing decision to strike claim for seized currency that claimant said he owned).

ment to prove that property is subject to forfeiture as opposed to forcing the property owner to prove his property is not subject to forfeiture." *United States v. $125,938.62*, 537 F.3d 1287, 1293 (11th Cir. 2008), quoting *United States v. Bowman*, 341 F.3d 1228, 1236 (11th Cir. 2003).

Rule G places the burden on the claimant to prove by a preponderance of evidence that he has standing. Rule G(8)(c)(ii)(A) adds that a motion to strike a claim because the claimant lacks standing "must be decided before any motion by the claimant to dismiss the action." And Rule G(8)(c)(ii)(B) provides that a motion to strike "may be presented … as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing."

If we were to read Rule G to require a claimant to demonstrate "legitimate" ownership, we would thus nullify a central reform of CAFRA. Putting the pieces together from the previous two paragraphs makes this easy to see. The government insists that demonstrating legitimate ownership is an indispensable part of a claimant "establishing standing by a preponderance of the evidence." Rule G(8)(c)(ii)(B). Demonstrating legitimate ownership, though, is tantamount to demonstrating that "property is not subject to forfeiture." *$125,938.62*, 537 F.3d at 1293. Any time the government moves for summary judgment on standing in a civil forfeiture action, then, the claimant would have to "carry the burden" of establishing by a preponderance of the evidence that his property is not subject to forfeiture. That would effectively shift the burden of proof from the government back to the claimant, contrary to 18 U.S.C. § 983(c). E.g., *United States v. $148,840 in U.S. Currency*, 521 F.3d 1268, 1274 (10th Cir. 2008)

(reversing summary judgment for government where district court required proof of legitimate ownership to show standing).

Such erroneous melding of standing and the merits in civil forfeiture actions would undermine other legal protections for claimants, as well. Claimants would be deprived of their right to a jury trial under Rule G(9). See generally *United States v. One 1976 Mercedes Benz 280S, Serial No. 11602012072193*, 618 F.2d 453, 466 (7th Cir. 1980) ("The conclusion appears inescapable that both English and American practice prior to 1791 definitely recognized jury trial of in rem actions at common law as the established mode of determining the propriety of statutory forfeitures on land for breach of statutory prohibitions."). Standing is decided by judges rather than juries. If deciding standing meant deciding "legitimate" ownership, then judges would functionally be deciding forfeitability, as discussed above. Further, if claimants obtain discovery it would often be only by the grace of the government. The government would rarely be put to its proof in a civil forfeiture action unless it elected not to file a summary judgment motion challenging standing, and it would be the rare case indeed where a claimant could convince a district court that he needed discovery to establish his own standing.

The procedural framework for civil forfeiture actions makes it particularly important that standing serve a "truly threshold" function in these cases. See *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002) (Sotomayor, J.). To the extent there is overlap between a tort plaintiff proving causation as an element of his cause of action and proving causation as an element of his

standing to pursue that cause of action in federal court, we know that the "plaintiff bears the burden of proof" as to both and must produce "the manner and degree of evidence required at the successive stages of the litigation." *Id.*, quoting *Lujan,* 504 U.S. at 561. "It must be remembered, however, that in a civil forfeiture action the *government* is the plaintiff, and it is the government's right to forfeiture that is the sole cause of action adjudicated." *Id.* "If the government fails to meet its burden of proof … the claimant need not produce any evidence at all." *Id.* Standing must be clearly separated from the merits in civil forfeiture cases so that the government is not relieved of its burden to "prove that property is subject to forfeiture." See *$125,938.62*, 537 F.3d at 1293.

Claimants Valdes and Brown have established standing to assert their claims to the defendant currency. The claimants were not required to show that their claims are "legitimate." That is a merits question, and presumably one for a jury to decide. The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.