# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.22-16499 |
| *Plaintiff-Appellee*, | D.C. No. 3:20-cv-00158-MMD-CSD |
| v. | |
| $1,106,775.00 IN UNITED STATES CURRENCY, | OPINION |
| *Defendant-Appellant*, | |
| OAK PORCELLI, | |
| *Claimant-Appellant*, | |
| and | |
| GINA PENNOCK, | |
| *Claimant*. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted En Banc January 14, 2026
Pasadena, California

Filed June 2, 2026

Before: Mary H. Murguia, Chief Judge, and Kim McLane Wardlaw, Consuelo M. Callahan, Jacqueline H. Nguyen, John B. Owens, Michelle T. Friedland, Eric D. Miller, Daniel A. Bress, Gabriel P. Sanchez, Roopali H. Desai and Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Bress;
Concurrence by Judge Sanchez

## SUMMARY[*]

### Civil Forfeiture

The en banc court reversed the district court's order striking Oak Porcelli's claim for currency that was the subject of the government's civil forfeiture action, and remanded for further proceedings.

The Drug Enforcement Administration seized the currency from Porcelli's car following a search, and the government filed a civil forfeiture complaint, alleging that the seized currency was the proceeds of an illegal drug trade. Porcelli filed a verified claim to the currency, stating that he owned all the money seized from his car, as well as a motion to suppress evidence from the search.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The government responded by filing interrogatories pursuant to Supplemental Rule G(6) of the Federal Rules of Civil Procedure, which provides that when someone files a claim for property that is the subject of a civil forfeiture action, the government "may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed."

The district court concluded that Porcelli's interrogatory responses were deficient and struck his claim for the currency as a discovery sanction, reasoning that he had failed to provide sufficient interrogatory responses concerning his standing to seek the currency. With Porcelli's claim stricken, the district court entered a default forfeiture judgment for the government without allowing further discovery or considering whether Porcelli had standing.

The en banc court held that Porcelli came forward with a legally sufficient claim of standing and interrogatory responses that provided the government with a sufficient basis for conducting further investigation into his claimed ownership of the money. In these circumstances, and when Porcelli was claiming currency that was indisputably seized from his possession, it was error for the district court to strike his claim when it did based on the alleged insufficiency of his Rule G(6) responses. Accordingly, the panel reversed the district court's order striking Porcelli's claim and remanded for further proceedings.

Concurring in part and concurring in the judgment, Judge Sanchez, joined by Judges Desai and Johnstone, agreed with the majority that Porcelli established standing to claim the currency. The district court therefore erred in issuing a litigation-ending discovery sanction based on the

supposed insufficiency of claimant's responses to the government's special interrogatories. In Judge Sanchez's view, the district court on remand should be directed to address Porcelli's pending motion to suppress, and the government should be required to respond to Porcelli's own civil discovery requests relating to the traffic stop.

## COUNSEL

Mina Chang (argued), Daniel D. Hollingsworth, and Peter H. Walkingshaw, Assistant United States Attorneys; Robert L. Ellman and Adam M. Flake, Assistant United States Attorneys, Appellate Chiefs; Jason M. Frierson and Sigal Chattah, United States Attorneys; Office of the United States Attorney, United States Department of Justice, Las Vegas, Nevada; for Plaintiff-Appellee.

Alyssa Barnard-Yanni (argued), Orrick Herrington & Sutcliffe LLP, New York, New York; Robert Loeb, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; David M. Michael and Edward M. Burch, Law Office of Michael & Burch LLP, San Francisco, California; for Claimant-Appellant and Defendant-Appellant.

## OPINION

BRESS, Circuit Judge, with whom MURGUIA, Chief Judge, and WARDLAW, CALLAHAN, NGUYEN, OWENS, FRIEDLAND, and MILLER, Circuit Judges, join, and with whom SANCHEZ, DESAI, and JOHNSTONE, Circuit Judges, join as to Parts I and II:

When someone files a claim for property that is the subject of a civil forfeiture action, the government "may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Fed. R. Civ. P. Supp. R. G(6). The district court in this case struck a claimant's claim for money seized from a vehicle he was driving, reasoning that he had failed to provide sufficient interrogatory responses concerning his standing to seek the funds. We hold that the district court abused its discretion in issuing this case-ending sanction at the inception of the civil forfeiture action. We reverse and remand for further proceedings.

### I

### A

Property used in illegal activities may be subject to forfeiture under federal law. *See* 18 U.S.C. § 981(a); 21 U.S.C. § 881(a). This includes money "furnished or intended to be furnished by any person in exchange for a controlled substance," as well as "all proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6); *see also* 18 U.S.C. § 981(a)(1)(A), (C). In a criminal prosecution, the government may seek forfeiture as part of the defendant's sentence. *See* 18 U.S.C. § 982. But regardless of whether

the government brings criminal charges, it can pursue civil forfeiture through an in rem proceeding against the property itself.  *See id.* § 983.

In a civil forfeiture case, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture," *i.e.*, that the property is tied to criminal wrongdoing.  *Id.* § 983(c)(1).  Placing this burden on the government was an important change that Congress made in the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, § 2(a), 114 Stat. 202, 205 (2000).  The prior rule, under which the claimant had to prove that the property was not subject to forfeiture, had prompted "widespread criticism," *United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002), based on perceived unfairness to persons from whom the government had seized property, *see United States v. Real Prop. in Section 9*, 241 F.3d 796, 799 (6th Cir. 2001).  Congress's legislative fix in CAFRA also resonates with broader due process concerns that have been raised about the civil forfeiture process.  *See Culley v. Marshall*, 601 U.S. 377, 393–403 (2024) (Gorsuch, J., joined by Thomas, J., concurring); *id.* at 403–08, 415 (Sotomayor, J., joined by Kagan and Jackson, JJ., dissenting); *Leonard v. Texas*, 580 U.S. 1178, 1178–82 (2017) (statement of Thomas, J., respecting the denial of certiorari).

In this case, we are concerned with matters of civil forfeiture procedure.  The Federal Rules of Civil Procedure contain a set of supplemental procedures specific to civil forfeiture actions.  These rules are found in Supplemental Rule G in the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supp. R.).  The Federal Rules of Civil Procedure also themselves apply to civil forfeiture

proceedings, "except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. R. A(2); *see also* Supp. R. G(1). But Rule G is the primary focus of our attention here.

The civil forfeiture process starts with the government filing a complaint in district court. 18 U.S.C. § 983(a)(3)(A). Under Supplemental Rule G(2), the government's complaint must identify the property to be forfeited and provide "detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." The government must also provide notice of the action to the public and known potential claimants. Supp. R. G(4); *see* 18 U.S.C. § 983(a). Claimants may then intervene to assert a claim to the property. Supp. R. G(5)(a); 18 U.S.C. § 983(a)(4)(A). These claims must "identify the specific property claimed" and "identify the claimant and state the claimant's interest in the property." Supp. R. G(5)(a)(i)(A), (B).

Although the burden is on the government to establish forfeitability, a civil forfeiture claimant must have Article III standing to seek the property. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Claimants "carry the burden of establishing standing by a preponderance of the evidence." Supp. R. G(8)(c)(ii)(B); *see $133,420.00*, 672 F.3d at 637–38. In the civil forfeiture context, claimants can establish standing by "showing that they have 'a colorable interest in the property,' which includes an ownership interest or a possessory interest." *$133,420.00*, 672 F.3d at 637 (quoting *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004)). These interests satisfy the elements of Article III standing "because an owner or possessor of

property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *Id.* at 638 (quoting *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)).

As is standard in civil litigation, the civil forfeiture claimant's burden to show standing depends on the stage of the case. As the Supreme Court explained in *Lujan*, the elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." 504 U.S. at 561. This framework "applies equally in civil forfeiture proceedings." *$133,420.00*, 672 F.3d at 638.

The showing required at each phase also depends on the nature of the claimed property interest. For ownership claims, we have been clear that "[a]t the motion to dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing." *Id.* (citing *United States v. 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008); *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994)). A claimant asserting a possessory interest, by contrast, must at the motion to dismiss stage "offer some 'factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property.'" *Id.* (quoting *$515,060.42*, 152 F.3d at 498).

At summary judgment, the attention shifts from a claimant's allegations to his evidence. At this point, a claimant can no longer rely on a "bare assertion of an

ownership or possessory interest" and must have "some other evidence . . . to survive a motion for summary judgment." *Id.* For ownership claims, we have said that "[t]he fact that property was seized from the claimant's possession . . . may be sufficient evidence, when coupled with a claim of ownership, to establish standing at the summary judgment stage." *Id.* at 639; *see also id.* at 640 ("That assertion of ownership, combined with [the claimant's] possession of the currency at the time it was seized, would be enough to establish [the claimant's] standing for purposes of a motion for summary judgment."); *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 642–43 (7th Cir. 2015) (holding that "an assertion of ownership combined with some evidence of ownership," such as "possession of currency when it was seized," is "sufficient to establish standing at the summary judgment stage of a civil forfeiture action" (citing *$133,420.00*, 672 F.3d at 640)); *United States v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1090–91 (D.C. Cir. 2017); *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1276–77 (10th Cir. 2008). For possessory interest claims, establishing standing at summary judgment requires presenting some evidence of how the claimant came to possess the property. *See $133,420.00*, 672 F.3d at 638–39.

The government can investigate a claimant's asserted standing through the civil discovery process. *See $133,420.00*, 672 F.3d at 642 (noting that the government is entitled to "test the veracity of [a claimant's] claim of ownership"); *United States v. 17 Coon Creek Rd.*, 787 F.3d 968, 978 n.4 (9th Cir. 2015) (same). Although an unequivocal sworn claim of ownership plus possession of the property at the time of seizure is enough, if unchallenged, to survive a summary judgment motion on standing, *see*

*$133,420.00*, 672 F.3d at 639–40; *$239,400*, 795 F.3d at 642–43; *$148,840.00*, 521 F.3d at 1276, the government is entitled to develop evidence to show that the claim of ownership is unfounded.

One special discovery tool at the government's disposal is Supplemental Rule G(6), which allows the government to "serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Supp. R. G(6)(a). As we have explained, "[t]he purpose of [Supplemental Rule G(6)] is 'to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing.'" *$133,420.00*, 672 F.3d at 635 (quoting Supp. R. G advisory committee's note to 2006 adoption, subdiv. (6)). Unlike Federal Rule of Civil Procedure 33 interrogatories, Supplemental Rule G(6) interrogatories are not limited in number and can be served without leave of court as soon as a claim is filed. *See* Supp. R. G advisory committee's note to 2006 adoption, subdiv. (6). However, the only permissible topics for Rule G(6) interrogatories are "the claimant's identity and relationship to the defendant property." Supp. R. G(6).

A companion to Rule G(6) is Rule G(8)(c), which provides that "[a]t any time before trial, the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing." Supp. R. G(8)(c)(i). So, the government can move to strike on procedural grounds—namely, that the claimant failed to provide the information required by Rule G(5), which sets forth the requirements for a claimant's responsive pleadings, or that the claimant failed to answer interrogatories served under Rule G(6). The government can

also move to strike on the substantive ground that the claimant lacks standing.

Notably, Rule G(8) provides that the government's motion to strike can be adjudicated "on the pleadings," "by summary judgment," or "after a hearing." Supp. R. G(8)(c)(ii)(B); *see also* Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 9-3(b), at 462 (3d ed. 2022) (noting that the three ways of adjudicating a motion to strike "correspond to the different stages of the litigation: the pleading stage, the summary judgment stage, and the stage at which the party bearing the burden of proof must meet its burden with admissible evidence in an evidentiary hearing"). Regardless of how the government's motion to strike is brought, Rule G provides that this motion "must be decided before any motion by the claimant to dismiss the action." Supp. R. G(8)(c)(ii)(A).

Together, Rule G and the usual discovery processes in the Federal Rules of Civil Procedure give the government various ways to investigate and contest a claimant's standing. These tools are important because frivolous claims can be a problem in civil forfeiture proceedings. *See* Cassella, *supra*, § 9-3(a), at 459 (noting that many claims are filed "by people who have no connection with the forfeiture case, except that they read about it on the internet," or "by persons who have a claim against the property *owner*, but no interest in any of his property"). Rule G(6) in particular gives the government an opportunity—as soon as a claim is filed—to gain some understanding of who the claimant is and his alleged relationship to the seized property. The government can then use that information as a basis to seek further discovery and potentially to strike the claim.

In addition, "[t]he Fourth Amendment exclusionary rule applies to civil forfeiture proceedings." *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 949 (9th Cir. 2010) (citing *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696 (1965)); *see United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008). Supplemental Rule G(8)(a) thus provides that "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence."

B

On November 19, 2019, a highway patrol officer stopped Oak Porcelli on Interstate 80 near Reno, Nevada, allegedly for following the vehicle in front of him too closely. After the officer claimed to have smelled marijuana and deemed some of Porcelli's answers suspicious, the traffic stop turned into a more extended encounter involving back-up officers and a police canine. Eventually, the officers conducted a full search of Porcelli's rented SUV. Inside the vehicle, they found a large amount of U.S. currency stored in vacuum-sealed plastic bags. In total, Porcelli was carrying $1,106,775 in cash. Suspicious that the money was involved in the illegal drug trade, the officers contacted the Drug Enforcement Administration (DEA), which inspected and ultimately seized the currency.

There is no indication that Porcelli was charged with any crimes relating to the money. But on March 10, 2020, the government filed a civil forfeiture complaint, alleging that the seized currency was the proceeds of an illegal drug trade. Porcelli filed a verified claim to the currency on April 30, 2020. In his claim, Porcelli stated that he owned all the money seized from his car. Porcelli also moved to suppress

the evidence from the search (including the cash and his statements to officers), arguing that the traffic stop was pretextual and unreasonably prolonged, in violation of the Fourth Amendment.[1]

The government responded by serving Porcelli with Rule G(6) interrogatories and moving to stay proceedings on Porcelli's motion to suppress. The government's Rule G(6) interrogatories posed various questions about the currency, including how Porcelli obtained it, which bank accounts the money had passed through, and who else could support his claim of ownership. Porcelli provided initial responses and issued his own discovery requests to the government. However, the government never responded to Porcelli's discovery requests because the magistrate judge granted the government's motion to stay all other discovery and proceedings. The magistrate judge also granted the government's motion to compel Porcelli to supplement his responses to the Rule G(6) interrogatories.

Porcelli objected to the magistrate judge's order, but the district court overruled those objections. The district court explained that the government was "seeking information regarding Claimants' standing," and "standing remains a threshold issue in this forfeiture action." According to the district court, "[d]etermining whether [Porcelli has] standing is the first and most critical question in this action," and Porcelli's interrogatory responses were "hinder[ing] [the government's] ability to gather information on Porcelli's standing." From this point forward, the civil forfeiture

---

[1] Gina Pennock, who was a passenger in the vehicle, also filed a claim in this civil forfeiture case, but she later withdrew it.

proceeding became exclusively focused on Porcelli's Rule G(6) interrogatory responses.

To comply with the district court's order, Porcelli served supplemental interrogatory responses. He provided his date of birth, Social Security number, residential address, and phone number. In response to a request to describe "the nature and extent" of his interest in the property, Porcelli responded that "I own all of the Defendant currency seized from the vehicle I rented and had just been driving, and consequently I had and have a right to possess it and otherwise exercise dominion and control over it." For an interrogatory asking him to describe how he acquired his interest in the property, Porcelli explained that he earned it "by working in the movie industry for 15 years, from ~1995–2010, and saving it." Porcelli also identified positions he held and movie companies that were his sources of funding, describing how "[s]ome of the money was acquired as cash initially, usually for the smaller projects, and some was initially checks or direct deposits or wire transfers or the like into my business account." According to Porcelli, "[t]he money would come from a mix of funding entities: individual investors up to large studios like Paramount, MGM, Disney and others."

To support his assertions, Porcelli provided a link to his IMDB page listing his past film projects. And in response to a request to describe relevant documents, Porcelli identified "[m]y tax returns and supporting documents from those years, as well as wire transfer receipts, contracts, and budgets for film projects showing my earnings, most of which would have to be obtained from old hard drives and perhaps my accountant's files." He also identified records held at Chase Bank for one of his business entities, Light Wave Entertainment, adding that "[m]uch of the money

originated as cash and never went into a bank or financial institution account, but any that did would have gone through Chase Bank." Porcelli also provided the Chase Bank account number for Light Wave Entertainment.

The government asserted that Porcelli's interrogatory responses remained deficient and filed a motion to strike his claim to the seized funds. The district court agreed that the interrogatory responses were still "indistinct and evasive," but afforded Porcelli a final opportunity to amend his responses. The court's order did not specify what additional information Porcelli should provide, nor did the court's prior orders do so.

After Porcelli did not amend his responses further, the government filed another motion to strike his claim, which the district court granted as a discovery sanction. In the district court's view, Porcelli had "impair[ed] the truth-seeking function of the judicial process" by not providing further information as to his standing. (Quotation marks omitted.) With Porcelli's claim stricken, the district court entered a default forfeiture judgment for the government. Because the case ended based on a discovery violation, no further discovery was conducted, nor did the district court consider whether Porcelli had standing. The district court also did not address Porcelli's motion to suppress or the government's contention that the money was connected to drug dealing.

Porcelli appealed. A divided panel of this court affirmed the district court's case-ending discovery sanction. *United States v. $1,106,775.00 in U.S. Currency*, 131 F.4th 710, 715 (9th Cir. 2025), *reh'g en banc granted, opinion vacated*, 157 F.4th 1102 (9th Cir. 2025). Upon the vote of a majority of

non-recused active judges, the court granted Porcelli's petition for rehearing en banc.

## II

We review the district court's grant of the government's motion to strike for abuse of discretion. *$133,420.00*, 672 F.3d at 637.  But our deference to district courts on discovery matters is tempered by the fact that dismissal for a discovery violation is proper only in "extreme circumstances." *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988)).  For that reason, "[w]here the drastic sanctions of dismissal or default are imposed . . . the range of discretion is narrowed." *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) (quoting *Henry v. Gill Indus.*, 983 F.2d 943, 946 (9th Cir. 1993)); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) ("A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe.").

In the context of Federal Rule of Civil Procedure 37, which governs discovery sanctions, we have held that "[o]nly 'willfulness, bad faith, and fault' justify terminating sanctions." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096 (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)).  The advisory committee's note to Supplemental Rule G states, however, that "the special role that subdivision (6) plays in the scheme for determining claim standing may justify a somewhat more demanding approach than the general approach to discovery sanctions under Rule 37."  Supp. R. G advisory committee's note to 2006 adoption, subdiv. (8); *see also United States v. $284,950.00 in U.S. Currency*, 933 F.3d 971, 974 (8th Cir. 2019)

(referencing the advisory committee's note to explain the more demanding standard for sanctions in the civil forfeiture context). But even with this advisory committee guidance, our preexisting body of Rule 37 case law remains relevant here. The standard for granting terminating sanctions in a civil forfeiture case should be demanding, especially when the case-ending sanction is levied toward the very beginning of the litigation and when the claimant is seeking property that was seized from his home, vehicle, or person.

We appreciate that the district court was operating in a difficult area that lacked extensive case law from this court. But we conclude that on the facts of this case, the district court abused its discretion in striking Porcelli's claim.

## A

Although we ultimately part ways with the district court, we begin with some common ground. Porcelli at times appears to take the position that because he has shown standing at this juncture based on his claimed ownership of money seized from his possession, the district court erred in requiring him to say anything more in his Rule G(6) interrogatory responses. Porcelli is correct that he said enough to demonstrate standing at this stage, but his conclusion about his Rule G(6) discovery obligations does not follow.

It is true that under our case law, Porcelli's "unequivocal assertion of an ownership interest in the property" was "sufficient by itself to establish standing" at the pleading stage. *$133,420.00*, 672 F.3d at 638. In fact, if Porcelli's responses were all we had, they would have been sufficient to survive a motion for summary judgment, because "coupled with [his] claim of ownership," Porcelli established that the "property was seized from [his]

possession." *Id.* at 639. If the government had moved to dismiss or for summary judgment based on Porcelli's lack of standing, it would have lost on the present record. *See id.* at 638–39.

But Porcelli overlooks the fact that even though his responses were sufficient to establish Article III standing at this stage, the government could still tee up a challenge to his stated basis for standing. The government need not accept Porcelli's claim of ownership at face value. Instead, it is entitled to investigate Porcelli's factual account to see if it holds up. Our cases thus make clear that the government is entitled to test Porcelli's ownership claim, including through reasonable use of Rule G(6) interrogatories.

Our decision in *$133,420.00* is key on this point. There, the claimant argued that because he could "establish standing merely by asserting an interest in the property," Rule G(6) "d[id] not allow the government to pose any questions about the circumstances in which the claimant obtained an interest in the property." *Id.* at 642. We disagreed because Rule G(6) "broadly allows the government to collect information regarding the claimant's 'relationship to the defendant property.'" *Id.* (quoting Supp. R. G(6)(a)). The claimant's narrow construction of Rule G(6) was untenable because it would make the requirements of Rule G(6) coextensive with what is already required for the claim itself under Rule G(5). *Id.* at 643 (citing Supp. R. G(5)(a)(i)) (explaining that the claimant's "limited interpretation would make Supplemental Rule G(6)(a) superfluous" given Rule G(5)'s requirement that a claimant identify himself and state his interest in the property).

Thus, if a claimant asserts an ownership interest, the government can still probe "the veracity of his claim of

ownership," *id.* at 642, both through Rule G(6) interrogatories and the other discovery devices available in civil litigation. Porcelli's unequivocal assertion of ownership and the fact that he possessed the money when seized would establish standing so long as the government did not further contest the point. *See id.* at 639–40. But the government can subject Porcelli's representations to the crucible of the discovery process in an effort to show why his narrative is unsupported and why he thus lacks standing. *See 17 Coon Creek Rd.*, 787 F.3d at 978 n.4 (noting that the government is "entitle[d] to 'adversarial testing' of [the claimant's] continued standing" (quoting *$133,420.00*, 672 F.3d at 642)); *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 652 (7th Cir. 2013) ("It is always open to a party to contest standing by proving facts that contradict his opponent's allegations of standing.").

Of course, once a claimant's standing is not "reasonably in dispute," his claim cannot be struck for failure to respond to G(6) interrogatories. *17 Coon Creek Rd.*, 787 F.3d at 977. For example, in *17 Coon Creek Road*, the claimant and the government agreed that the claimant owned and resided on the property—so there was no question the claimant had Article III standing. *Id.* at 977–78. But in a case like this one, where the government intends to dispute the core facts underlying the claimant's assertion of standing, Rule G(6) interrogatories are still fair game.[2]

---

[2] For avoidance of doubt, we hold only that Porcelli sufficiently established his standing at the present, nascent stage of these proceedings, and that Porcelli would have established his standing through summary judgment in the absence of contrary evidence. As we have discussed, however, the government may still seek to demonstrate through further discovery that Porcelli's account of ownership is

## B

The foregoing discussion is not, however, without its own limits. That Porcelli was required to respond to the Rule G(6) interrogatories does not mean that civil forfeiture claims like his—where the property was indisputably taken from him—should always be litigated through the vehicle of case-opening Rule G(6) discovery disputes. The Rules do not anticipate that all civil forfeiture litigation will be resolved through Rule G(6). The advisory committee's notes thus describe Rule G(6) as allowing "limited interrogatories," cautioning that "[n]ot every failure to respond to subdivision (6) interrogatories warrants an order striking the claim." Supp. R. G advisory committee's note to 2006 adoption, subdivs. (6), (8); *see also 17 Coon Creek Rd.*, 787 F.3d at 976 n.2 (explaining that Rule G(8) "does not compel the court to grant the motion upon finding non-compliance with Rule G(6)"). Yet, in this case, the civil forfeiture proceeding was over before it began, even though Porcelli's interrogatory responses—which the government never rebutted—established his standing at this stage of the proceedings.

The government asserts on appeal that Porcelli's interrogatory responses "prevented [it] from investigating and litigating" Porcelli's standing. The district court likewise viewed Porcelli as hindering the government's ability to litigate standing. But those characterizations are inconsistent with the record. Despite Porcelli's initially sparse discovery responses, he ultimately came forward with substantial additional information in his amended Rule G(6) responses. Porcelli explained how he earned the money ("by

---

unsupported and that he therefore lacks standing. The government could seek to assert that position in a future motion for summary judgment.

working in the movie industry for 15 years"), what documentation would support his ownership ("wire transfer receipts, contracts, and budgets for film projects showing my earnings"), and where he kept the money ("[m]uch of the money originated as cash and never went into a bank or financial institution account, but any that did would have gone through Chase Bank"). He also provided the government with the names of the movie companies he received money from, a link to his IMDB page listing past projects, a Chase Bank account number, and various personal identifying information.

The district court did not identify any specific additional information that Porcelli should have provided. And Porcelli's responses gave the United States plenty to investigate. Using the leads Porcelli provided, the government could have built a case against his standing, *e.g.*, by showing that Porcelli's claims of ownership were unsupported and that he therefore must be carrying the money on behalf of someone else. But instead of subjecting Porcelli's account to adversarial testing, the government did nothing, choosing to litigate the entire case as a discovery dispute.

For this stage of the proceedings, some of the government's Rule G(6) requests were also excessive. For example, Interrogatory 6 required "[a] detailed description of the circumstances of every transaction by which you acquired or obtained each interest in the property, including every name, address (residential and business), and telephone number (residential, cellular, and business) of each witness to such transaction." And Interrogatory 7 called for Porcelli to "[d]escribe in detail every document evidencing, recording, facilitating, or otherwise relating to each transaction identified in response to Interrogatory 6."

Porcelli surely could be required to respond to these two interrogatories to some extent at an early stage in the case, and he eventually did so.  But at least when sought at the outset of the civil forfeiture proceeding, the level of detail the government insisted on here in its motion for terminating sanctions went beyond what Rule G(6) envisions.  Supp. R. G advisory committee's note to 2006 adoption, subdivs. (6), (8); *see also $133,420.00*, 672 F.3d at 643 n.5 (agreeing with the claimant "that many of the government's discovery requests were beyond the scope of Rule G(6)(a)").

Our decision in *$133,420.00*, which referred to Rule G(6) as "broadly allow[ing] the government to collect information regarding the claimant's 'relationship to the defendant property,'" was a response to the claimant's argument that Rule G(6) was narrowly limited to "only questions regarding the identity of the claimant and the type of legal interest asserted."  672 F.3d at 642.  This does not mean that the government can use Rule G(6) to ask questions unrelated to standing, to shift CAFRA's burden of proof to claimants, to seek excessive and unduly burdensome discovery, or to obtain dismissal based on an alleged lack of discovery responses if the responses already given provide adequate fodder for investigation of the claimant's asserted basis for standing.  Rule G(6) "permits the government to file limited interrogatories," Supp. R. G advisory committee's note to 2006 adoption, subdiv. (6), and our decision in *$133,420.00*—which referenced that same point, *see* 672 F.3d at 635—must be understood in that context.  And while *$133,420.00* said in a footnote that an interrogatory similar to Interrogatory No. 6 was "well within the scope of" Rule G(6), *id.* at 643 n.5, we understand that comment to refer to the general type of inquiries in the

interrogatory, not the specific list of information requested or the time in the litigation when it was demanded.

In this case, Porcelli came forward with a legally sufficient claim of standing and interrogatory responses that provided the government with a sufficient basis for conducting further investigation into his claimed ownership of the money. In these circumstances, and when Porcelli was claiming money that was indisputably seized from his possession, it was error for the district court to strike his claim when it did based on the alleged insufficiency of his Rule G(6) responses.

Our conclusion fits comfortably within established law. It is consistent with the overriding principle that dismissal for discovery violations is warranted only in "extreme circumstances," *In re Exxon Valdez*, 102 F.3d at 432 (quotation marks omitted), which is even more true when the case has just begun. Our conclusion also coheres with the principle that the "elements of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *$133,420.00*, 672 F.3d at 638 (quoting *Lujan*, 504 U.S. at 561).

Finally, our result in this case aligns with principles and precedents more specific to civil forfeiture. It respects the due process concerns that have been raised about civil forfeiture proceedings. *See Culley*, 601 U.S. at 393–403 (Gorsuch, J., joined by Thomas, J., concurring); *id.* at 403–08, 415 (Sotomayor, J., joined by Kagan and Jackson, JJ., dissenting); *Leonard*, 580 U.S. at 1178–82 (statement of Thomas, J.). And it allows for the fact that cash is more difficult to account for. *See $17,900.00*, 859 F.3d at 1091

("So especially when cash is at issue, requiring more than 'some evidence' of ownership would be onerous, unfair, and unrealistic."); *see also Leonard*, 580 U.S. at 1180 (statement of Thomas, J.) (observing that "forfeiture operations frequently target the poor and other groups least able to defend their interests in forfeiture proceedings," who "are more likely to use cash than alternative forms of payment").

Our determination in this case is also consistent with case law that works to ensure, consistent with CAFRA placing the ultimate burden of proof on the government, 18 U.S.C. § 983(c)(1), that procedural devices are not misused to shut down civil forfeiture claims prematurely. To avoid shifting the statutory burden of proof, courts have rejected the government's attempts to require claimants to make a greater showing of standing at the motion to dismiss and summary judgment stages. *See, e.g.*, *$148,840.00*, 521 F.3d at 1274–77; *$17,900.00*, 859 F.3d at 1090–92; *$239,400*, 795 F.3d at 643–46. Courts have likewise held that claimants are not required to assert in their Rule G(5) claims any "explanation or contextual information" about the claimant's ownership of the seized currency, because this too "would turn the burden of proof in forfeiture actions on its head." *United States v. $31,000 in U.S. Currency*, 872 F.3d 342, 350–53 (6th Cir. 2017); *see also United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047, 1049 (8th Cir. 2019) (en banc); *United States v. $196,969.00 in U.S. Currency*, 719 F.3d 644, 647 (7th Cir. 2013).

The government in these different cases "jumped the gun." *$574,840*, 719 F.3d at 653. That is what happened here as well. When a claimant seeks the return of property seized from him by the government, proper attention must be given to the claim before it is thrown out based on a discovery sanction.

## III

In remanding this case for further proceedings, we emphasize that claimants should not take their responses to Rule G(6) interrogatories lightly. Representations made to courts and litigants in these interrogatory responses must be truthful and accurate. If in fact Porcelli has misrepresented how he came to possess the cash seized from his vehicle, as the government intimates, further proceedings will no doubt expose this. District courts have substantial discretion in assessing these matters, and if a claimant is found to have made false or misleading statements about his standing, the government and district court are entitled to utilize the full range of appropriate remedies. District courts retain broad discretion in overseeing the discovery process, within the framework we have outlined in this opinion.

The parties in this case have also extensively debated the proper sequence of further proceedings should we remand, including as to Porcelli's standing and motion to suppress. Judge Sanchez's concurrence offers one perspective on these sequencing issues, although one that we understand the government resists. Because the district court ended this case prematurely based on a discovery sanction, it has yet to consider these issues. These matters are entrusted to the district court in the first instance, with the observation that the pendency of Porcelli's suppression motion raises important issues that will merit careful consideration, even as the government, after further discovery, could attempt to challenge Porcelli's standing without implicating that pending motion.

**REVERSED AND REMANDED.**

SANCHEZ, Circuit Judge, joined by DESAI and JOHNSTONE, Circuit Judges, concurring in part and concurring in the judgment:

I agree with my colleagues that, on the record before us, Oak Porcelli established standing to claim the money that was seized from his rental car in a traffic stop by Nevada highway patrol.  Where, as here, a claimant unequivocally asserts an ownership interest over the seized property, and the property was in his possession at the time of seizure, these facts are sufficient to establish standing at both the pleading and summary judgment stages of a civil forfeiture action.  *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638–39 (9th Cir. 2012).  The district court therefore erred in issuing a litigation-ending discovery sanction based on the supposed insufficiency of Porcelli's responses to the government's special interrogatories.[1]  *See* Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(6).

The question is then, what should happen next on remand?  In my view, the district court should be directed to address Porcelli's pending motion to suppress, and the government should be required to respond to Porcelli's own civil discovery requests relating to the traffic stop.  The government should not be allowed to continue to evade

---

[1] As our sister circuits have held, requiring a claimant to give more fulsome and detailed discovery responses impermissibly shifts the government's statutory burden of proof and blends standing with the merits of a civil forfeiture action.  *See United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 645–46 (7th Cir. 2015); *United States v. $125,938.62*, 537 F.3d 1287, 1293 (11th Cir. 2008); *United States v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1091 (D.C. Cir. 2017).

judicial inquiry into whether the traffic stop and resulting search complied with the Fourth Amendment.

Two important principles inform my views. First, civil forfeiture is a highly controversial practice, allowing the government to seize property with limited judicial process. *Leonard v. Texas*, 580 U.S. 1178, 1179 (2017) (statement of Thomas, J.). The due process concerns that pervade civil forfeiture practices are live in this case, where the district court one-sidedly ruled in favor of the government on several of its motions, stalled the adjudication of a motion to suppress and discovery requests by Porcelli, and prematurely ended the litigation by issuing a discovery sanction against him. Fairness dictates that both sides to a civil dispute should be allowed to have their motions heard and considered.

Second, the Fourth Amendment applies in civil forfeiture cases and provides important guardrails in deterring government abuses and suppressing unlawfully obtained evidence. *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 949–950 (9th Cir. 2010). The exclusionary rule carries particular weight in a case like Porcelli's, because if the government loses the motion to suppress and has no independent evidence connecting the subject property to drug trafficking, then the government is unlikely to carry its burden of establishing forfeitability. On the facts and circumstances presented here, a successful motion to suppress may well determine the outcome of this civil forfeiture action. In the interest of due process and the protections enshrined in the Fourth Amendment, that motion should be heard.

## I.

Under our precedent, Porcelli cleared the bar for standing at the motion to dismiss stage by his "unequivocal assertion of an ownership interest in the property," *United States v. $999,830.00 in U.S. Currency*, 704 F.3d 1042, 1042–43 (9th Cir. 2012), and at the summary judgment stage by coupling his claim of ownership with "[t]he fact that property was seized from [his] possession," *$133,420.00*, 672 F.3d at 639. Absent its special interrogatories under Rule G(6), on this record the government would have lost any motion to dismiss or motion for summary judgment on the basis of standing. But the district court never reached such questions of standing because the court instead terminated the case based upon the supposed inadequacy of Porcelli's discovery responses. This was error. As the majority explains, Porcelli's responses to the government's Rule G(6) special interrogatories were more than sufficient to meet his discovery obligation and show standing at this stage of the litigation. He provided ample information about his connection to the seized property, including bank information, a link to his IMDb page listing his movie projects, and personal information including his address and social security number.

A claimant is not required to prove up the merits of his case to establish Article III standing at the outset of a civil forfeiture action. As other circuit courts have held, a requirement to show "legitimate ownership" in the initial stages of a civil forfeiture proceeding "is tantamount to demonstrating" on the merits that the "property is not subject to forfeiture." *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 646 (7th Cir. 2015) (citing *United States v. $125,938.62*, 537 F.3d 1287, 1293 (11th Cir. 2008)); *see also United States v. $17,900.00 in U.S.*

*Currency*, 859 F.3d 1085, 1091 (D.C. Cir. 2017) (cautioning that courts must avoid "impermissibly shifting the merits burden to the claimant," and therefore "making [the] claimant prove that her property is *unconnected* to unlawful activity"). Such a requirement would threaten to "nullify" the Civil Asset Forfeiture Reform Act of 2000 (CAFRA)'s mandate that the burden of proof lies with the government to demonstrate that the seized property is subject to forfeiture. 18 U.S.C. § 983(c)(1); *see $239,400*, 795 F.3d at 645–646 (observing that CAFRA shifted the burden of proof to the government in civil forfeiture actions). Between Porcelli's verified claim, his answer to the government's complaint, and his responses to the government's Rule G(6) special interrogatories, there is no question that Porcelli's pleadings and responses were sufficient to establish standing at least through the summary judgment stage of this litigation. *See $133,420.00*, 672 F.3d at 638. By requiring Porcelli to amplify his responses beyond what is required at the pleading stage, the district court essentially demanded a showing that he was the legitimate owner of the property, improperly shifting the government's burden of proof and blending standing with the merits of the forfeiture action. *$239,400*, 795 F.3d at 640.

## II.

In reading the majority's opinion, one might be surprised to learn that standing is not the only issue in this forfeiture litigation. Shortly after filing his verified claim, Porcelli also filed a motion to suppress, challenging the traffic stop and the search of his person, rental vehicle, and belongings as violative of his Fourth Amendment rights. Porcelli also served interrogatories on the government relating to the traffic stop and the government's assertion that the subject

property was traceable to illegal drug trafficking or other specified criminal activity.  At the government's request, the district court stayed consideration of the motion to suppress and the government's obligation to respond to Porcelli's discovery pending further review of Porcelli's Rule G(6) interrogatory responses.  To date, the government has avoided any Fourth Amendment inquiry into the search and seizure here.  That should not be allowed to continue.

As our caselaw has long recognized, the Fourth Amendment exclusionary rule applies in civil forfeiture proceedings.  *See United States v. $277,000.00 U.S. Currency*, 941 F.2d 898, 902 (9th Cir. 1991) ("[A]ny evidence which is the product of an illegal search or seizure must be excluded in the forfeiture hearing."); *United States v. One (1) 1971 Harley-Davidson Motorcycle*, 508 F.2d 351, 351–52 (9th Cir. 1974) ("[E]vidence derived from a search in violation of the Fourth Amendment must be excluded at a forfeiture proceeding," but "so long as the requirements for forfeiture were proven by evidence not tainted by the seizure, the contraband could properly be forfeited."); *$186,416.00*, 590 F.3d at 949 (same).  Our cases have also developed other, related Fourth Amendment protections applicable in civil forfeiture actions.  Courts cannot consider the amount of money in dispute in the forfeiture action when that money is the fruit of an unlawful search.  *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1063, 1065 (9th Cir. 1994), *superseded by statute on another ground as stated in United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002); *see also United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1165 (9th Cir. 2008) ("[W]e cannot consider the amount of currency that the government illegally seized.").  While courts may "recognize that illegally seized property consists of

currency," *$493,850.00*, 518 F.3d at 1166, "illegally seized property," including the money itself, must "not be introduced as *evidence* in a forfeiture proceeding," *$191,910.00*, 16 F.3d at 1063 (citing *$277,000.00*, 941 F.2d at 902) (holding that "the district court was correct in excluding the illegally-seized money" from a civil forfeiture action as fruit of an unlawful detention).[2]

It is for good reason that our precedent allows for application of the exclusionary rule in civil forfeiture cases. Civil forfeiture "enable[s] the government to seize . . . property without any predeprivation judicial process and to obtain forfeiture of the property even when the owner is personally innocent." *Leonard*, 580 U.S. at 1179. Modern civil forfeiture statutes are "designed, at least in part, to punish the owner of property." *Id.* Yet the government may "do so civilly" and avoid many of the "procedural protections that accompany criminal proceedings." *Id.* The civil forfeiture regime is ripe for abuse, and these abuses are disproportionately likely to affect the "groups least able to defend their interests in forfeiture proceedings." *Id.* at 1180. Such a "quasi-criminal" regime carries with it significant constitutional and due process concerns observed by many. *$191,910.00*, 16 F.3d at 1068 (quoting *United States v. Riverbend Farms, Inc.*, 847 F.2d 553, 558 (9th Cir. 1988)); *see also Culley v. Marshall*, 601 U.S. 377, 401 (2024) (Gorsuch, J., joined by Thomas, J., concurring); *id.* at 414–15 (Sotomayor, J., joined by Kagan and Jackson, JJ., dissenting); *United States v.*

---

[2] These Fourth Amendment protections are codified in Rule G(8)(a), which provides that "a party with standing to contest the lawfulness of the [property's] seizure may move to suppress use of the property as evidence."

*$1,106,775.00 in United States Currency*, 131 F.4th 710, 727 (9th Cir. 2025) (Bress, J., dissenting), *reh'g en banc granted, opinion vacated*, 157 F.4th 1102 (9th Cir. 2025).

The suppression of unlawfully obtained evidence thus stands as a distinctive and essential safeguard against government abuse in a civil forfeiture scheme otherwise rife with constitutional concerns.   Because the government maintains a "strong financial incentive to prevail in civil forfeiture actions," the possibility of exclusionary sanctions can be "especially effective in deterring law enforcement agents from engaging in illegal [search and seizure]." *$186,416.00*, 590 F.3d at 950.   In this context, a failure to apply the exclusionary rule when necessary directly "reward[s] the government" for its Fourth Amendment violation.   *$493,850.00*, 518 F.3d at 1165.   As we have previously explained, the exclusionary rule in civil forfeiture cases also "protects judicial integrity by ensuring that the courts do not serve as a conduit through which the government fills its coffers at the expense of those whose constitutional rights its agents violated."   *$186,416.00*, 590 F.3d at 950.

These considerations are particularly apt in this appeal, where the district court disposed entirely of Porcelli's case through a discovery sanction without taking any steps to resolve his Fourth Amendment challenge.   The court instead allowed the government to weaponize Rule G as both a sword to push Porcelli out of court and as a shield from meeting its burden to prove forfeitability through lawfully obtained evidence.[3]

---

[3] There is no indication that Congress intended for answers to the government's special interrogatories to precede—and certainly not to

Indeed, Porcelli's potential success on the motion to suppress could well determine the outcome of this case. The government has given no indication that it has independent evidence connecting the seized currency to illegal activity under 18 U.S.C. § 981(a)(1).[4] If the large amount of seized cash—along with alleged canine narcotic detection and other evidence from the traffic stop—is ruled inadmissible, and the government cannot produce "untainted evidence" connecting the cash to drug trafficking or other statutorily designated grounds, then the government is unlikely to carry its burden of establishing forfeitability. *See $277,000.00*, 941 F.2d at 902; *$186,416.00*, 590 F.3d at 954 (holding that without considering the amount of money illegally seized by the government, "the mere presence of currency, of any amount" was insufficient to connect the money to drug sales); *$191,910.00*, 16 F.3d at 1072 (discussing that small sums of money are seldom sufficient, even "when accompanied by additional factors," to establish connection to drug activity).

---

preclude—a ruling on a motion to suppress. Rule G(6)(c) states that the government is not required to respond to a claimant's motion to dismiss under Rule G(8)(b) until after the claimant has answered the government's interrogatories relating to standing. Rule G(8)(c)(ii)(A) similarly requires that a government motion to strike be decided before a claimant's motion to dismiss. But the rules do not prescribe a similar sequencing for a pending motion to suppress under Rule G(8)(a).

[4] If Porcelli prevails on his motion to suppress, the government may still aim to prove that the currency is subject to forfeiture, but it must do so using "independently derived evidence." Supp. R. G(8)(a). *See also $277,000.00*, 941 F.2d at 902 (holding that "the mere fact that property was illegally seized does not immunize that property from forfeiture"); *$493,850.00*, 518 F.3d at 1170 ("[R]egardless of the amount of currency at issue . . . the evidence connecting [claimants] with cocaine trafficking is overwhelming.").

The government may continue to investigate the veracity of Porcelli's interrogatory responses, but that investigation must not act as a precondition to the prompt resolution of his Fourth Amendment challenge. Porcelli has met his standing requirement under Rule G(8)(a), and the district court is now obligated to resolve his motion to suppress. *See, e.g.*, *$239,400*, 795 F.3d at 641, 642 n.2 (addressing a claimant's motion to suppress before turning to discovery or the merits). I do not mean to suggest that a ruling on a motion to suppress must always precede other rulings in a civil forfeiture action. But under these circumstances, where Porcelli has done enough to establish standing through the pleading and summary judgment stages of this action, and a ruling on the motion to suppress may well be determinative, the district court should address his pending motion to suppress before resolving other issues.